LEVI HETFIELD *vs.* THE CENTRAL RAILROAD COMPANY.

1. In an action of trespass *quare clausum fregit*, title to the land may be given in evidence under the plea of not guilty; but matter admitting the trespass, and seeking to justify it, as leave and license, must be specially pleaded.

2. A license to enter upon land, not coupled with an interest in the premises, may be revoked at the will of the party granting it. A right to come upon land of another, and remain for an indefinite time, can be granted only by deed; and where the license is by parol, it may be revoked at any time, even if money be paid for it, and expense incurred in erecting buildings or other permanent improvements on the premises.

3. Where the charter of a railroad company provides that the company may obtain land by consent of the owner, it means a legal consent; and they can only obtain it in such manner as existing laws provide for acquiring title to or the right to occupy real estate. Such a clause in a railroad charter does not affect the statute of frauds.

4. The title to land for a railroad does not pass by the filing of the survey in the office of the secretary of state.

In error to the Supreme Court—See page 206.

*C. Parker*, for plaintiff in error.

*F. T. Frelinghuysen*, for defendants.

The opinion of the court was delivered by

ELMER, J. The question upon which this cause turns is, whether, by the true construction of the charter of the

Elizabethtown and Somerville Railroad Company, (*Acts of 1831, p. 81*,) the defendants, who have succeeded to their rights, have, by virtue of the survey laying out their railroad, deposited in the office of the secretary of state, a good possessory title to the land where the trespass complained of was committed. A license to enter upon it, either by consent of Wood, who owned the land when the railroad was constructed, or by the plaintiff, who has since purchased and taken a deed for it, not having been pleaded, the parol evidence of such license, offered at the trial, was rightly overruled. Title to the land may be given in evidence in an action of trespass *quare clausum fregit* under the plea of not guilty, because that disproves the plaintiff's declaration, by showing that his land was not entered upon; but matter admitting a trespass, and seeking to excuse it, as leave and license, must be specially pleaded. The counsel for the defendants, admitting this to be the law, very properly rested his case upon the ground that their survey, duly made and filed, gave them a good title, and such was the opinion of the majority of the judges in the Supreme Court.

By the sixth section of the charter, it is provided that the company, or its agents, may enter upon all lands, for the purpose of exploring, surveying and laying out the route of their road, not exceeding sixty-six feet wide; and when the same shall be determined upon, and a survey thereof deposited in the office of the secretary of state, then it shall be lawful for them to enter upon, use, and occupy any such land necessary to lay rails, and to do all other things suitable and necessary for the completion and repair of the road, subject to such compensation as is thereinafter provided; provided always, that the payment or tender of all damages for the occupancy of such lands be made before the company shall enter upon the ground, unless the consent of the owner be first had and obtained. Section 7th provides that when the company cannot agree with the owner for the use and purchase thereof, or when, by reason of any disability, no agree-

ment can be made, a description of the land required shall be presented to one of the justices of the Supreme Court, who shall appoint commissioners to assess the damages; and their report, together with said description, filed in the clerk's office of the county, shall at all times be received as plenary evidence of the right of the company. By the 10th section it is declared that the railroad and the land over which the same shall pass are vested in the said company, and their successors and assigns, during the continuance of the charter.

It is urged that the evidence of the owner's consent or agreement is not required to be in writing, and that the title is not acquired by such consent or agreement, or by payment of the damages, but by the condemnation alleged to be consummated by the filing of the survey. That the consent of the owner amounted to a leave and license to enter, and so long as it remained unrevoked took away the right of the owner to maintain trespass, is undeniable; but was it the intention of the legislature to make filing of the survey a condemnation of the land, so as to vest it in the company?

It has been the law of New Jersey, since the first settlement of the colony, that a title to land by purchase could only be acquired by a deed or will made by a person of full age and of sound mind, or for a time by a fine or recovery, and that a parol consent to enter upon land amounted only to a license, which could be at any time revoked. No principle is better settled than that, although where the common law and a statute differ, the common law gives place to the statute, and an old statute gives place to a new one; this is to be understood only when the latter statute is couched in negative terms, or where its matter is so clearly repugnant that it necessarily implies a negative. It is clear, I think, that those provisions in the seventh section of the charter under consideration which require the particular description of the land and the assessment of the damages by the commissioners to be filed in the

clerk's office of the county, and there to become a record, do make that record equivalent to the owner's deed; for it is expressly enacted that it shall be plenary evidence of the company's right to the land. But the absence of any such enactment in reference to the filing of the survey shows, I think, that no such effect was meant to be given to it; that provision, indeed, would have been useless if the survey itself gave the right. So far from the provisions requiring the owner's consent, or an agreement with him for the purchase of the land, being repugnant to the previously existing law which, to make that consent or agreement pass an estate, required them to be in writing, they are, in my opinion, entirely consistent with that law, and are framed with express reference to it. The survey filed in the office of the secretary of state contains simply the courses and distances of the line intended to be the middle of the railroad track, and was not required to contain any designation or particular description of the land intended to be used. That might be sixty-six feet in width or less, at the option of the company. How much they would take depended upon their agreement with the owner, or if, by reason of his absence or disability, or from any other reason, no such agreement could be made, then upon the description presented to the judge, and filed in the office of the clerk of the county. In order to obtain a title to the land necessary for their purposes, the company was authorized to purchase it as individuals purchase lands of the owners, or if they thought proper to rely on the consent of the owner to occupy it, to take that consent subject to the same consequences as follow in other cases; but if they could not obtain a satisfactory consent or a title by purchase, they were authorized to apply to a justice of the Supreme Court, and thus acquire a title against the consent of the owner.

That railroads are of the highest importance, and are "one of the mightiest elements of national power, either for defence or aggression," is undoubtedly true; and they

certainly deserve at our hands, and, I am happy to say, have always received, as I trust they always will receive, the most liberal support and the most scrupulous care to guard them against all undue prejudice. But it is a well established and very important principle, which has always been applied to railroad, as well as to all other charters, that in grants by the public, any ambiguity in the terms of the contract must operate against the company and in favor of the public.

As to the supposed danger that these great public works may be seriously injured, and the travel over them interrupted, by holding that the companies must acquire a title by a regular assessment and payment or tender of the damages, or by the same means that other corporations or individuals acquire one it appears to me that it is rather imaginary than real. It was held by this court, in the case of *Costar* v. *N. J. Railroad Co.*, 4 *Zab.* 730, that they may at any time take the necessary steps to acquire the land by means of an assessment; and it was then noticed that a delay to do so might happen because the owner had chosen tacitly to acquiesce in the occupancy of his land.

The case of *Den* v. *The Morris Canal Co.*, 4 *Zab.* 587, differs entirely from this. It was the peculiar provision of the charter of that company that the owner of the land might sue the company for entering upon it, as the Supreme Court held in the case of *Kough* v. *Darcy*, 6 *Halst.* 241, "not to punish a trespass on his property, but to procure a recompense for the injury he had sustained," a recompense precisely the same as commissioners might award. The right to maintain such a suit, thus given, was one of the modes of compensation provided by the act, and no previous consent of the owner was required before the company could enter and use the land. The necessary implication therefore was, that the filing of the survey conferred the title, which he could then by action obtain full compensation for. It was insisted that in this

case the owner had the same remedy—but this is not so. If his consent to use the land is not so obtained as to be irrevocable, he can bring his action as the plaintiff has. It is, however, the common law action to punish a trespass, which may be repeated for every future trespass, until a right is duly acquired by the defendants, or until the interposition of a court of equity, if a case is made requiring such a remedy.

As to the argument that the railroad is a public highway, and that the plaintiff has so long acquiesced in it as to have dedicated so much of his land as is the reby occupied, to the public, it is sufficient to say that the record shows no exception on this point. It does not appear that the defendants set up any such claim ; and if they did, it must be presumed that the court laid down the law correctly.

I am of opinion that the judgment of the Supreme Court must be reversed, and the judgment of the Circuit Court affirmed.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, and Judges ELMER, COMBS, CORNELISON, KENNEDY, RISLEY, SWAIN, and WOOD.

CITED *in Vanatta* v. *Morristown,* 5 *Vr.* 448 ; *Mulford* v. *Peterson,* 6 *Vr.* 130 ; *N. J. Midland Railway Co.* v. *Van Syckle,* 8 *Vr.* 501 ; *Veghte* v. *Raritan Water Power Co.,* 4 *C. E. Gr.* 153 ; *J. C. & B. R. Co.* v. *J. C. & H. H. R. Co.,* 5 *C. E. Gr.* 67 ; *Raritan Water Power Co.* v. *Veghte,* 6 *C. E. Gr.* 469.