FREDDIE BROWN, PLAINTIFF-APPELLANT, v. LINS PHAR-
MACY, INC., A NEW JERSEY CORPORATION, AND A. J.
S. REALTY COMPANY, A NEW JERSEY CORPORATION,
DEFENDANTS-RESPONDENTS.

Argued March 17, 1975—Decided June 5, 1975.

*Mr. David L. Greene* argued the cause for appellant.

*Mr. Bernard F. Boglioli* argued the cause for respondents.

## O R D E R
This matter having been duly presented to the Court, it
is ordered that the petition for certification is dismissed as
having been improvidently granted.

SCHREIBER, J. (dissenting). Freddie Brown instituted this action against Lins Pharmacy, Inc., a drug store, and A. J. S. Realty Company, owner of the building in which the store was located, for damages for personal injuries she suffered arising out of a fall on a sidewalk. The trial judge granted the defendants' motion for dismissal at the close of the plaintiff's case. The Appellate Division affirmed, and this Court granted certification. 67 *N. J.* 84 (1975).

The building in question was located at the corner of Fifteenth Avenue and Main Street in Belmar, New Jersey. The ground floor was occupied by the defendant Lins Pharmacy, Inc. and used as a drug store.

On September 7, 1971 the plaintiff, shortly after 12 noon, was walking to the defendant Pharmacy's store. She testified:

A. Well, as I entered the door, I got almost to the door and I tripped and fell.

\*  \*  \*  \*  \*  \*  \*  \*

Q. Could you tell me exactly where you were when you fell?

A. I was at a, right at the door, almost at the approach to the doorway going into the store.

Q. And how far from the door were you?

A. Right up on the door, and I tripped right there and fell.

Q. Could you tell me in terms of feet?

A. Pardon?

Q. Can you tell me in terms of distance, how far from the door?

A. I was right in the door, right up on the door, and fell right in the door.

The plaintiff was shown a photograph of part of the building including the entrance. She identified the picture in the following manner:

Q. Now, is this photograph an accurate representation of the way Lins Pharmacy appears?

A. Yes, this is right there on F Street and Fifteenth Avenue.

\*  \*  \*  \*  \*  \*  \*  \*

Q. Is that the way Lins Pharmacy looked at the time of the accident?

A. Yes.

Q. All right.

Now, can you show me on that photograph where it was that you fell?
A. Right in the — this area right here.
Q. All right.
THE COURT: Get a marking pencil. The Reporter has one.
Q. Could you mark the exact spot where it was that you fell?
A. (Witness marks photograph).

The trial court sustained defendants' objection to the photograph being received in evidence on the ground that a proper foundation had not been laid because the plaintiff did not establish when and by whom it had been taken.

When the plaintiff was asked what caused her to fall, the defendants objected on the ground that she could only testify to what she saw and felt. The court sustained the objection and then directed plaintiff's counsel to ask plaintiff to describe what was there. She testified that she had not observed the condition of the sidewalk before the accident (she was not "concentrating on the sidewalk") or after (because she "was in so much pain").

After the fall, the plaintiff was taken home and then to the hospital. There she was operated on for a fracture of the right patella and a rupture of the right quadraceps tendon.

When the plaintiff called an engineer as her next witness, the trial court, on defendants' objection, refused to permit the engineer to testify. The plaintiff's offer of proof with respect to his contemplated testimony was to the effect that the engineer had examined the area adjacent to the door on September 30, 1971 and that it was in such condition so as to create a hazard. His report and sketches were received for purposes of the offer.

The plaintiff rested, and the trial court, following the principle of law that an abutting landowner is not liable for injury suffered by a pedestrian on a defective *public* sidewalk unless the proofs show that the owner or his predecessor in title participated in the creation or continuance of that condition, dismissed the action. *Moskowitz v. Herman,* 16 *N. J.* 223 (1954).

The trial court committed error when it refused to permit the photograph to be received in evidence. The law is well settled that if a photograph truly depicts the condition which existed at the time of the event it is admissible. *Evid. R.* 67; *Kellam v. Akers Motor Lines, Inc.,* 133 *N. J. L.* 1, 3 (E. & A. 1945); *Garafola v. Rosecliff Realty Co., Inc.,* 24 *N. J. Super.* 28, 42 (App. Div. 1952). The plaintiff identified the photograph in question as accurately depicting the physical appearance of the Lins Pharmacy front entrance and building at the time of the accident. Accordingly, the photograph should have been admitted into evidence. It was not necessary that the photographer be produced, (*Kellam v. Akers Motor Lines, Inc., supra*), or that the date of the photograph be established (*Ellis v. Rosenberg,* 15 *N. J. Misc.* 37 (Sup. Ct. 1936)). The trial court's reliance on those grounds for rejection of the photograph was misplaced.

Examination of the photograph discloses that the front entrance door is located where there would ordinarily be the corner of the building. It is as if the corner had been truncated and replaced by a door. Those parts of the walls that are above the level of the door appear to meet at right angles over the sidewalk area immediately in front of the door and extend out over the entrance to the door. At door level the walls extend about 6 inches beyond the front door. If they were projected until they met, the area within the projection would have included some distance into the sidewalk in front of the door. The total effect is a small vestibule appearance at the outside of the door.

The plaintiff marked on the photograph the point at which she fell. She had described that place as almost at the door and indicated that it was within the vestibule-like location. Although the plaintiff failed to produce a survey or other comparable evidence which would precisely locate the property line, one could reasonably infer that the area where the plaintiff fell was within the confines of the private property and not on the public sidewalk.

When the trial judge held at the conclusion of the plaintiff's case that "[t]here can be no other reasonable inference drawn . . . except that it was part of the public sidewalk in front of this particular premises," he usurped the function of the jury.[1] At that juncture of the trial, the court was bound to accept all the evidence and legitimate inferences which may be drawn therefrom which supported the plaintiff. *Bexiga v. Havir Mfg. Corp.*, 60 *N. J.* 402 (1972).

The refusal to permit the engineer to testify was apparently grounded on several reasons. It was asserted that the plaintiff's failure to prove when the walk was constructed and by whom foreclosed his testimony. This was error. It was unnecessary to establish when and by whom the sidewalk was constructed so long as it was within the property line. Those facts may be pertinent in a public sidewalk context. They are not in a private sidewalk situation. A proprietor of premises owes a duty to the public which has been invited for business purposes of that owner to exercise reasonable care to see that one who enters on his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation. *Brody v. Albert Lifson & Sons*, 17 *N. J.* 383 (1955) ; *Bozza v. Vornado, Inc.*, 42 *N. J.* 355 (1964). Once the plaintiff was on the premises defendants owed her a duty of reasonable care. If the private sidewalk area was in a hazardous condition, as the expert proposed to testify, and this condition caused her to fall, then of course, plaintiff was entitled to recover.

The trial court also refused to permit the engineer expert to testify because the plaintiff had not pointed out to the engineer where she fell. However, since the plaintiff had delineated this spot on the photograph and the engineer had inspected that particular area, this ground is obviously specious.

---

[1] On the motion the plaintiff contended that the fall occurred on private property. The complaint alleged it happened on a sidewalk owned and controlled by the defendants. It did not assert that it was a public sidewalk. Unfortunately no pretrial conference had been held in this case.

The trial court indicated, additionally, that since the engineer's examination was made some three weeks after the accident his testimony was inadmissible. Evidence of a condition of an inanimate object may be admissible to demonstrate that the condition existed for some prior period of time. *Alcott v. Public Service Corp.*, 78 *N. J. L.* 482 (E. & A. 1909). Admissibility depends on the nature of the object and the time lapse. Surely such an inference may be drawn that the condition of the entrance walk described by the engineer had remained the same for 23 days. 2 *Wigmore, Evidence* (3rd ed. 1940), § 437 at 413–414; *see Orcutt v. Hoyt*, 6·*N. J.* 46, 56 (1950).

The trial court seemed to be of the opinion that because the plaintiff had not identified the cause of her fall the engineer should not be permitted to testify. The plaintiff had testified that she tripped and fell and that she had not observed the walk before or after.

The engineer would have testified that, running out from the doorway to the public walk, there is a joint within the concrete slab. The surface of the pavement then pitches down to the south and to the north. The southerly pitch down is 1¼″ per foot, and in the northerly direction it is ¾″ per foot. At this point the slab to the north is ¾″ higher, creating a sudden raised surface from the doorway out to the public sidewalk. His report states that: "Anyone walking onto the above-mentioned area in front of the store could easily trip, stumble, or fall due to the difficult-to-perceive sudden high edge coupled with the downward pitch of the surface." His report states that the construction and maintenance of that concrete pavement were contrary to general safety requirements and to the Life Safety Code (formerly the Building Exits Code) which provides that exterior ways of exit access shall have smooth, solid floors substantially level, and that exits, ways of approach thereto, and ways of travel from exits into streets shall be continuously maintained free of all obstructions or impediments to full instant use.

The rejected evidence could reasonably have justified conclusions that the plaintiff fell within the premises which were occupied by Lins Pharmacy, Inc. and owned by A. J. S. Realty Company, and the plaintiff tripped at the place which was hazardous because of its construction (a person could easily trip due to raised slab and pitch). There then would have been sufficient evidence from which a jury could reasonably have inferred that plaintiff fell because of the defective condition.

The photograph should have been admitted into evidence and the engineer should have been permitted to testify. It was for the jury to determine whether the plaintiff fell on the public or private sidewalk. If the fall occurred on the private property, then the fact finding issues of negligence, proximate cause and damages should have been submitted to the jury. If the jury found that the incident took place on the public sidewalk, then it should have been charged to bring in a verdict for the defendants.

The judgment of dismissal should be reversed and the matter remanded for a new trial.

In reaching this result, I have accepted the existing law of this State with respect to public sidewalks. In so doing, it should be noted, however, that no reevaluation or reconsideration of that law has been made.

The petition for certification was initially granted in this case because the Court desired to reconsider the existing public sidewalk law. However, after having heard oral argument and examined the briefs, the Court concluded that the factual record was such that this was not an appropriate case for such reconsideration. Accordingly, the majority has decided to reconsider its order granting the petition for certification and reverse that determination.

Grounds for certification have been stated in terms of a question of general public importance, a conflict in decisions, and in other matters if the interest of justice requires. R. 2:12–4. Certification is not to be granted where there has been a final judgment of the Appellate Division "except for

special reasons." *R.* 2:12–4. The rule recognizes that where the parties have had one appeal there must be "special reasons" for granting certification. Questions of fact should not have to be reviewed here unless intertwined with a determination of vital legal issues. *Cf.* dissenting opinion of Justice Jacobs, *Giangrasso v. Dean Floor Covering Co.*, 51 *N. J.* 80, 84 (1968).

I concur in the finding of the majority that this particular case is not the proper vehicle for a reconsideration of the public sidewalk law in this State. The plaintiff did not establish whether title to the property extended to the middle of the street, whether, if there was a public easement, it was owned by the municipality, the county or the State, what pertinent municipal ordinances imposed obligations on whom with respect to the construction and maintenance of the sidewalk, what the rights and obligations were between the landlord and the tenant, etc. There were too many unknown elements.

Once having granted the petition for certification and having considered the briefs, the record, the exhibits, and argument of counsel, it is incumbent on the Court to adjudicate the rights and duties which exist between the litigants, at least in the light of the existing law. Note the dissenting opinion of Justice Jacobs, *Giangrasso v. Dean Floor Covering Co., supra.* Failure to do so could, and in this case does, result in an inequitable and unjust determination. Although this Court may justifiably only accept cases on certification which it believes are of general importance and in other matters if the interest of justice requires, once it has acted it should not shut its eyes to what has occurred at the trial level. The position of the majority not only countenances the existing law but also justifies the existence of a result which is contrary to that existing law.

HUGHES, C. J., and PASHMAN, J., join in this dissent.

*For the Order*—Justices MOUNTAIN, SULLIVAN and CLIFFORD and Judge CONFORD—4.

*Against the Order*—Chief Justice HUGHES and Justices PASHMAN and SCHREIBER—3.