[No. 4318–1. Division One. December 19, 1977.]

CANTERBURY SHORES ASSOCIATES, *Respondent,* v. LAKESHORE PROPERTIES, INC., *Respondent,* ROBERT C. SAMUEL, *Appellant.*

Aiken, St. Louis & Siljeg, Robert C. St. Louis, and Douglas W. McQuaid, for appellant.

J. Richard Manning, Robert E. Ratcliffe, and William M. Robinson, for respondents.

JAMES, J.—While this appeal was pending, Canterbury Shores Associates, a joint venture, succeeded to the interest of Verna E. Mercy, individually, and as coexecutor, and Frederick Mercy, Jr., coexecutor of the estate of Edgar B. Mercy. A motion to substitute Canterbury Shores Associates as plaintiff–respondent was granted. The opinion which follows is, however, written in the context of the Mercys as the plaintiffs below.

Edgewater Apartments and Canterbury Shores Apartments are large, adjacent, luxury apartment complexes located on the shores of Lake Washington in Seattle. The dispute which precipitated this action concerns the encroachment of Canterbury's garage driveway over a relatively small portion of Edgewater's land.

Edgewater was built in the late 1930's. Canterbury Shores was built by Lakeshore Properties, Inc., in 1967. Plaintiff, Verna E. Mercy, and her deceased husband purchased Canterbury from Lakeshore Properties in 1968.

Defendant, Robert C. Samuel, is presently the fee owner of Edgewater.

The Mercys' prayer for relief asks that title to the land utilized by the driveway be "quieted in them." Samuel's answer seeks dismissal of the Mercys' complaint with prejudice or in the alternative a judgment for $100,000. The trial judge rejected the Mercys' claim for title but decreed a permanent easement "for ingress, egress, a driveway, parking and utilities (to the extent that the same now exist)" for the Mercys and their successors and assigns. He denied Samuel's counterclaim. We affirm.

█ Samuel does not assign error to any finding of fact. As a consequence, we treat the findings as verities. *Hoke v. Stevens–Norton, Inc.*, 60 Wn.2d 775, 375 P.2d 743 (1962); *Daughtry v. Jet Aeration Co.*, 18 Wn. App. 155, 556 P.2d 1267 (1977). Samuel challenges, however, the trial judge's conclusion that

> Samuel is estopped by his conduct to deny that a permanent easement exists for the benefit of Canterbury over a portion of the blacktop Canterbury driveway and for the existing parking to the extent that it encroaches upon the Edgewater property.

Conclusion of law No. 3.

In his oral summary, the trial judge stated, "The facts of this case cry out for some form of relief. And the law, in developing theories, or to take care of situations, I think has developed an easement by estoppel." We agree that the circumstances relevant to the construction of the driveway by Canterbury were such that, if no legal theory would support the Mercys' claim, equity should intervene to deny Samuel what would clearly be an unjust enrichment.

In summary, the unchallenged findings of fact establish that at the time Canterbury Shores was being constructed, the controlling interest in both Lakeshore Properties, Inc., and Edgewater Park, Inc., the then owner of Edgewater Apartments, was held by Margaret Vorwick and her deceased husband. Defendant Samuel was Mrs. Vorwick's son–in–law. The Vorwicks and their agents

treated the two properties as owned in common and commencing in 1964 made or authorized representations by each other to the City of Seattle, the City of Seattle Planning Commission, the Seattle City Council, the Seattle Building Department, lenders, their architect, and others that there was common ownership in order to secure the rezoning of the property upon which Canterbury was to be constructed, a building permit for Canterbury, and to develop an alternative means of access to the property upon which Canterbury was subsequently constructed. At this time Samuel was active in the promotion of Lakeshore and had knowledge of its activities.

. . . Samuel participated in meetings in which the representations were discussed, and expressly or impliedly authorized the representations which were made by [the real estate broker employed by the Vorwicks]. These representations included a representation to the architect that an easement would be granted from the owner of Edgewater to Lakeshore of 20 feet in a northerly and easterly direction along the southerly and easterly boundary line of the property upon which Canterbury was to be constructed and who in reliance upon said representations prepared and submitted plans to the Seattle Building Department reflecting said easement. A building permit was secured in January of 1966 based upon said plans. . . . No such easement was ever recorded.

Findings of fact Nos. 5 and 6, in part.

The trial judge further found that at the time Canterbury was being designed, the sole access to the property was afforded by "an existing easement for ingress and egress and a sewer between the existing garages on the Edgewater property . . ." Finding of fact No. 7. He further found that the development scheme contemplated the relinquishment of that easement by Lakeshore and the creation of another means of access which included the dedication of a public street (Canterbury Lane), and the granting of a new easement by Edgewater over the area presently utilized for the Canterbury driveway and parking. He found that the scheme was "mutually beneficial to Edgewater and Lakeshore." Finding of fact No. 7.

In furtherance of the plan, the existing easement was canceled and the public street dedicated by Lakeshore, but the contemplated new easement was never executed by Edgewater. The trial judge found that:

At the time of the purchase, the Mercys intended to purchase and purchased what they saw physically in existence on the ground. Mrs. Vorwick [and her agents] intended to execute proper documents to give Lakeshore use of the driveway and ingress and egress over the improved blacktop portion of the Canterbury property.

Finding of fact No. 14.

The real property statute of frauds, RCW 64.04.010, requires that every contract creating an encumbrance upon real property shall be in writing. But a court of equity will specifically enforce a parol contract for the conveyance of an interest in real property where there has been part performance by one of the parties if "the contract [can] be established to the satisfaction of the court by clear and unequivocal proof, leaving no doubt as to the character, terms, and existence of the contract." *Payn v. Hoge,* 21 Wn.2d 32, 39, 149 P.2d 939 (1944). *Accord, Adams Marine Serv., Inc. v. Fishel,* 42 Wn.2d 555, 257 P.2d 203 (1953).

The promise to grant an easement was a benefit to the Canterbury land. The undisputed facts establish that the Mercys were innocent purchasers for value and, as such, can assert the legal rights of their predecessor, Lakeshore Properties, Inc. *Stewart v. Beghtel,* 38 Wn.2d 870, 234 P.2d 484 (1951). On the other hand, as the trial judge concluded, "Samuel is not a bona fide purchaser for value of Edgewater without notice of the encroachments and had or is charged with knowledge of the rights of the Mercys and Lakeshore." Conclusion of law No. 2.

Upon performance of its promise to relinquish the existing access easement and dedicate Canterbury Lane to the city, Lakeshore could have demanded specific performance by Edgewater. *Miller v. McCamish,* 78 Wn.2d 821, 479 P.2d 919 (1971). The Mercys, as successors to Lakeshore, are entitled to a judgment requiring Edgewater to specifically

perform its agreement to grant the easement for the driveway and parking over the occupied portion of its land. *Stewart v. Beghtel, supra.* The judgment of the trial court, although based upon the theory of estoppel, effectively accomplishes this result.

Samuel also assigns error to the rejection of his offer to testify that in 1971, he had a conversation with the deceased Edgar Mercy in which Mercy

> acknowledged that he knew where the property line was and that his driveway encroached upon the Edgewater property; and that at that time Mr. Samuel offered to grant an easement—or excuse me, a license, and that was—and Mr. Mercy did not object to that.

Although Samuel conceded that his testimony would be barred by the "dead man" statute, RCW 5.60.030, unless waived, he contended that the Mercys had waived the bar of the statute by prior interrogation concerning a conversation at the time the Mercys purchased Lakeshore. Samuel then testified he "had no discussions with Mr. Mercy except in regard to his financial capabilities." The evidence established that subsequent to the Mercys' purchase, Samuel unilaterally executed and recorded a revocable license for use of the driveway by Canterbury. If it was error to reject Samuel's offer of proof, it was harmless error.

Affirmed.

WILLIAMS and CALLOW, JJ., concur.