James L. ALLEE and Barbara Allee, husband and wife; Buddy D. Allen and Geneva Darlene Allen, husband and wife; Earl Baker; Russell N. Bozarth and June M. Bozarth, husband and wife; Emory L. Brandt and Lula Faye Brandt, husband and wife; Claude V. Clark; Kenneth Hamm and Ada Hamm, husband and wife; Enid N. Haughton; Donald L. Hofstetter and Nadine Hofstetter, husband and wife; William J. Ortega and Esther Ortega, husband and wife; Elmer L. Romines; Mary V. Paxton; Edward A. Schmidt and Birdie M. Schmidt, husband and wife; A. L. Tucker; Don E. Wacaser and Mary L. Wacaser, husband and wife; Clyde Harris and Judy Harris, husband and wife; William Weir and Vena L. Weir, husband and wife; Arthur Barnett; Glenn Cathy and R. W. Wingo, Plaintiffs-Respondents,

v.

Robert S. KIRK and Dorothy Kirk, husband and wife; and Robert D. Turley and Janet Turley, husband and wife, Defendants-Appellants.

No. WD 30721.

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

platted in Keithley's Second Addition next to the lake, referred to as first tier lots. Allee and the other plaintiffs were the owners of lots which did not front on the lake, referred to as second tier lots.

The court entered a judgment declaring all of the owners in Keithley's Second Addition acquired an easement by estoppel to use the strip of ground for the placing of docks, access to such docks and for fishing, boating and walking. Robert Kirk, Robert Turley and their wives, being first tier lot owners, appeal and contend the court erred in finding an easement by estoppel. Reversed and remanded.

The strip of land in question varies in width from about 8 feet to 25 feet. In 1961 Howard Gravatt purchased this strip from Keithley, who platted the subdivision, and Gravatt later sold the strip, with other real estate, to the R.L.C. Company. R.L.C. sold the strip to M. L. Hight in October, 1975, and Hight in turn conveyed to several first tier owners that part of the strip adjoining their lots.

Gravatt testified that while he owned the strip in question he allowed second tier owners to build boat docks on the strip at the waterline and stated that any lot owner in Keithley's Second Addition could utilize 10 feet of waterline along the strip for the construction of a dock as long as there was sufficient land. The space was allocated on a first come-first served basis. Gravatt testified that he told those who desired to build a dock where the dock was to be placed. He said he tried to keep people from using the strip for picnicing or littering. Gravatt said that he sold several second tier lots on the representation that they could use this strip for the placement of docks and with the understanding they would have access to the waterfront.

A recorded deed indicated easements of about 8 feet wide along many lot lines and indicated this was for the purpose of ingress and egress from the second tier lots to the waterfront. Next to the Kirk lot, which was located at one end of the strip, a gravel road ran down near the water.

Stanley B. Cox, Sedalia, for defendants-appellants.

William F. Brown, Sedalia, for plaintiffs-respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

James Allee and several other owners of lots in Keithley's Beach Second Addition, a subdivision in Benton County, brought suit for injunctive and declaratory relief to determine their rights in a strip of ground lying between the platted lots of such subdivision and the waterline of the Lake of the Ozarks. Robert Kirk and the other defendants were the owners of those lots

From this gravel road it was possible to drive vehicles along the strip next to the waterfront and people used the strip for access to their docks when it was necessary to reach them by vehicle. The strip was maintained in grass with no visible roadway across it, but the evidence was that vehicles on occasion did use it to reach the docks. The testimony indicated there were 10 to 15 docks located on this strip.

Gravatt testified that all of the use of the strip while he owned it was with permission. An R.L.C. stockholder testified that when Gravatt sold the land to R.L.C. it was known that the strip in question here was included in their purchase. When they learned the strip had been conveyed to them, they asked Gravatt to continue to control the use of that strip and explained that R.L.C. did not want anything to do with the strip.

In 1975, R.L.C. sold the strip to M. L. Hight. Hight testified that he felt the strip in question should be controlled by the first tier owners who adjoin the strip, and for that reason, he conveyed the strip to those persons so that all of the strip had been conveyed except that part adjoining two or three first tier lots. He stated he did not want the responsibility of controlling the strip. Hight stated it was his understanding that second tier owners could build docks on the strip and he knew that second tier owners claimed that right. He also understood they could use the strip for walking up and down and could drive a vehicle when it was necessary to do so to reach their dock.

The only evidence concerning a recorded easement was the 8 foot easement shown on some of the lots next to the lot line. There was no recorded easement shown concerning the use of the strip in question.

Kirk testified that he owned a first tier lot and had bought that portion of the strip in question adjoining his lot from Hight. He said it was his understanding second tier owners could drive vehicles across the strip to reach the dock when it was necessary to transport a boat or motor to the dock. He did not feel second tier owners had any

right to construct docks on the strip. Apparently this litigation was sparked by efforts made by Kirk to keep people from using this strip for the construction of docks and to drive vehicles to the docks for reasons other than transporting boats or motors.

Although the petition claimed the right in the second tier owners to use the strip by prescription and recorded easement, the court found the use of the strip had been by permission so no prescriptive right had been obtained. The court further found there was no recorded easement giving second tier lot owners the right to construct docks and drive vehicles to the docks. The court found the only recorded easement was that along certain lot lines for the purpose of ingress and egress to the shoreline. However, the court did find that second tier lots had been sold with the promise that they could use the strip on a first come-first served basis for the construction of docks and thereby the second tier owners had obtained an easement by estoppel to use the strip for those purposes.

The evidence fully supports the finding of the trial court that no prescriptive rights had been acquired in this strip because the use of this strip was shown to be by permission. The evidence also supports a finding there was no recorded easement for placing docks or driving vehicles on the strip.

The question to be resolved on this appeal is whether or not the evidence supports the judgment of the court that all second tier lot owners acquired an easement by estoppel to use the strip for building docks and driving vehicles when necessary to reach them and for fishing, boating and walking.

■ The general rule is that an easement may be created by grant, express or implied, or by prescription but it cannot be created by parol, except that in certain circumstances an easement may exist by reason of an estoppel. 25 Am.Jur.2d, Easements and Licenses, § 17, p. 430. Since the only grant was found to be parol, it is apparent that the only ground upon which an easement could be found to exist in this

case would be by estoppel. Easements by estoppel have been recognized in Missouri from early times. *Fuhr v. Dean*, 26 Mo. 116 (1857). One of the leading cases on this subject is *Sanford v. Kern*, 223 Mo. 616, 122 S.W. 1051 (1909) where the court stated 122 S.W. at p. 1056:

There is a further doctrine comporting with reason and justice and recognized as clear equity, viz., that a license to use a way or an easement, though without consideration at its inception, may not be revoked at will where, from the very nature of the license, the licensee was expected to go to great expense in order to enjoy it and where that expense has been incurred. In such case equitable estoppel arises and the relations of the parties may not be severed and the easement destroyed at the whim and by the act of the licensor alone. They must be severed, if at all, on equitable principles.

The evidence showed that the strip was used by permission which rested solely in parol. Thus the permission originally given constituted only a bare license which could be revoked at any time. *School District v. Lindsay*, 47 Mo.App. 134 (1891); *Gibson v. Sharp*, 277 S.W.2d 672, 677[2, 3] (Mo.App.1955). The exception to the revocation of such a license is stated in *Sanford*. In this case the license to use the strip in question could be revoked and the evidence shows it has been revoked by the first tier owners by their act in barring access except over the recorded easements. However, those who can show compliance with the rule in *Sanford*, are entitled to have an easement by estoppel created in their favor. As to those who do not come within the *Sanford* rule, the bare parol license they had to use the strip has been revoked. The easement created by estoppel in favor of those who come within the *Sanford* rule in the construction of docks on the strip in question have acquired an easement appurtenant to the lots owned by them because the docks are for the benefit of the second tier lots. *Stroup v. Johnson*, 539 S.W.2d 711, 712[1–3] (Mo.App.1976). Such easements, being appurtenant to the second tier lots, go with the conveyance of those lots even though not specifically mentioned in the transfer. *Stroup* at 713[4–5]. The easements established by estoppel were not extinguished by the conveyance of the strip from Hight to adjoining first tier owners. *Loumar Development Co. v. Redel*, 369 S.W.2d 252, 257[13, 14] (Mo.1963).

The evidence does not identify the second tier owners who have docks, nor whether in placing docks on the strip it may be held they have performed in such fashion that they can be said to be entitled to an easement by estoppel under *Sanford*. The court will be required to hear additional evidence to make that determination.

Applying all of the foregoing principles to the facts in this case results in the establishment of an easement by estoppel in the strip in question in favor of those second tier lots whose owners can show compliance with *Sanford* by constructing docks. Kirk concedes this easement includes the right to have access to the docks by vehicle when necessary. This easement was not extinguished by the conveyance of the strip from Hight to the adjoining first tier owners and such easement is appurtenant to the second tier lots and will pass with the conveyance of those lots whether mentioned or not.

The court entered a judgment finding an easement in all of the lot owners in Keithley's Second Addition. This judgment is too broad and must be confined to the lots whose owners have complied with the rule in *Sanford*. The court also found the easement created by estoppel gave second tier owners the right to use the strip for fishing, boating, walking and access to boat docks. No expenditure of money was shown to exercise the rights granted in parol for fishing, boating and walking. Thus no easement by estoppel could arise and those rights reposing only in a parol license could and were revoked. The only easement by estoppel which could arise under the facts here was for the location of docks by those who can show compliance with *Sanford* to exercise that right granted by parol. Because Kirk agrees the right to use a dock carries with it the right to transport a boat

and motor to the dock by vehicle, that right should be included in the easement arising by estoppel in favor of the lots whose owners are entitled to such easement.

The judgment is reversed. The court is directed to enter a judgment declaring that second tier owners have an easement for ingress and egress to the water along the easements shown by recorded instruments and those lot owners who show compliance with the rule in *Sanford* prior to the revocation of the parol license have an easement by estoppel to maintain such docks and have the right to transport boats and motors by vehicle to and from such docks across the strip in question. The court should determine the identity of those who complied with the *Sanford* rule and the lots they owned and the judgment should declare the easement by estoppel to be appurtenant to those lots.

The judgment is reversed and the cause remanded for the taking of additional evidence and the entry of a new judgment as herein directed.

All concur.