LEO H. MAHONY, EDWARD SAMUELSEN AND 3530 REALTY CORPORATION, PLAINTIFF-RESPONDENTS, v. STEPHEN DANIS AND CLAIRE DANIS, HUSBAND AND WIFE, DEFENDANTS-APPELLANTS.

December 23, 1983.

Richard J. Schachter, Schachter, Wohl, Cohn & Trombadore and Melvin S. Narol, Jamieson, McCardell, Moore, Peskin & Spicer, for plaintiffs-respondents.

Joyce M. Usiskin, for defendants-appellants.

ORDER

This matter having been duly considered and the Court having determined that certification was improvidently granted;

It is ORDERED that the within appeal be and hereby is dismissed.

HANDLER, J., concurring.

Following presentation of briefs and oral argument on the merits of this controversy, the Court has determined that certification of this case was improvidently granted. I agree with this disposition.

The case involves a dispute between principals of a realty corporation that acquired property, secured a municipal zoning variance and erected and operated an office building. In conjunction with this enterprise a portion of the adjoining property of the defendants was used for parking necessary for the office building use. The individual defendant husband was a principal of the corporation. He personally undertook to secure the necessary zoning variance on behalf of the corporation and his co-owners. At this time, the availability of defendants' adjoining property for office building parking purposes was expressly made known to the local Board of Adjustment. Such additional parking was made a condition to the grant of the variance.

This state of affairs continued for approximately ten years. The defendants thereafter refused to acknowledge that a por-

tion of their property had thus been committed to the office building parking use. The resulting lawsuit eventuated in the trial court determination that defendants' property was dedicated to parking incidental to the operations of the adjoining office building consistent with the original grant of the variance and its continuous unbroken use for that purpose. Perceiving no special issues or significant reversible error, the Appellate Division affirmed this judgment without opinion. I am now satisfied that this case requires no further appellate treatment and should not have been certified by this Court.

In exercising our discretionary authority to decide which cases should be certified for final adjudication by the Supreme Court, we must be governed by the standards prescribed for the discharge of this responsibility. *R.* 2:12–4. The application of these standards in this case reveals no substantial grounds for certification. *See In re Route 280 Contract,* 89 *N.J.* 1 (1982).

There are in this matter, arguably, several reasons that could be advanced to justify the grant of certification. One is that the appeal "presents a question of general public importance which has not been but should be settled by the Supreme Court." *R.* 2:12–4.

The trial court purported to resolve the conflicting claims of the parties upon the pleadings and affidavits, without a plenary hearing. The challenge to this procedural disposition goes only to the validity of the grant of a motion for summary judgment. The legal standards for summary judgment have been long settled. So viewed, the appeal presents no question of "general public importance" meriting our review and resolution. *R.* 2:12–4.

The trial court also characterized its judgment in favor of plaintiffs as involving the doctrine of "easement by estoppel." Our courts previously may not have considered or applied a legal doctrine so identified or denominated. Nevertheless, it seems clear that general equitable considerations dominated the trial court's determination of the controversy. There is little doubt that the trial court reached its ultimate conclusion in this case by applying traditional, well-understood principles of equity. It

is not remarkable that such equitable principles were applied to resolve a controversy involving interests in real property. In assessing the significance of a case for appellate purposes, this Court need not be bound by the labels, or even the rationale, utilized by the court below. Here, the trial court's characterization of its conclusion in terms of a novel legal doctrine does not transmute the case into one of "general public importance" demanding further exposition by this Court.

Another plausible ground for certification might be that the subject matter of this litigation "calls for an exercise of the Supreme Court's supervision." *R.* 2:12–4. The controversy here is devoid of any problems that invite the supervision or superintendence of this Court. It is a case that hardly transcends the immediate interests of the litigants. Their dispute should have been steered to settlement long before it engaged the considerable efforts and attention of three courts—the Superior Court, Law Division, the Superior Court, Appellate Division, and this Court.

I am not persuaded that this case should invoke our certification authority in the "interest of justice." *R.* 2:12–4. The record fairly suggests that for a good many years the defendants knowingly derived advantages from the arrangement, which now has resulted in an encumbrance upon a portion of their property consistent with the benefits they enjoyed. The result reached by the trial court, regardless of the legal doctrine employed, is not palpably wrong, unfair or unjust. As noted, the judgment affects only the parties to this particular dispute. The rights of innocent persons, or an unwary public, are not jeopardized. Additionally, as between the parties, there has been no showing of an egregious miscarriage of justice. Consequently, whether the result is reached by the construct of an easement by estoppel or by an estoppel predicated on traditional principles of equity, I am unconvinced that the case presents any judicial imperative to which we must respond by granting certification.

Typically, a case for certification encompasses several of the relevant factors controlling the exercise of the Court's discretionary appellate jurisdiction. Even though satisfaction of any one of the criteria governing certification would suffice to invoke the affirmative exercise of this Court's discretionary appellate authority, none forcefully appears in this appeal. We ought not to divert judicial attention from worthy cases to those offering only "noetic perjinkities." *Nottelson v. Smith Steel Wkrs. D.A.L.U. 19806*, 643 *F.*2d 445, 457 (7 Cir.1981), *cert.* den. 454 *U.S.* 1046, 102 *S.Ct.* 587, 70 *L.Ed.*2d 488 (1981) (Pell, J., dissenting, criticizing majority in religion discrimination case). While it is theoretically possible to identify an issue of some intellectual novelty or academic curiosity in this case, I find it difficult to escalate such an issue, without more, into a matter of general public significance requiring resolution by this Court. I find similar difficulty in regarding the matter as calling for this Court's supervision or attention or otherwise implicating the clear interests of justice.

Notwithstanding an initial grant of certification, a current assessment of the issues reveals that significant grounds for entertaining this appeal are wanting. Accordingly, I believe we act correctly and responsibly in rescinding the grant of certification. This course conforms to the purpose and spirit of our rules of practice. It also comports with the conventional wisdom inherent in the conservation of finite judicial resources. *See Idaho Dept. of Employment v. Smith*, 434 *U.S.* 100, 103, 98 *S.Ct.* 327, 329, 54 *L.Ed.*2d 324, 329 (1977) (Stevens, J., dissenting in part) (inappropriate to grant *certiorari* with respect to a decision that does not create a conflict and does not involve a question of national importance). Where, as in this case, a further consideration of the matter brings us to a belated realization that a cause is not truly certifiable, it would, in my view, be a misapplication and misuse of our discretionary jurisdictional authority to continue the appeal. There is no intrinsic reason for the Court to bind itself to an initial decision shown through added reflection to have been improvident.

SCHREIBER, J., dissenting.

In this case the Court was called upon for the first time to declare whether an easement may be created by estoppel and, if so, under what circumstances. Those questions come within the perimeter of Rule 2:12–4, the rule setting forth guidelines governing when we should grant petitions for certification. Rule 2:12–4 provides that certification will be granted if the appeal presents a "question of general importance which has not been but should be settled by the Supreme Court" and "in other matters if the interest of justice requires." Motivated by those criteria we granted defendants' petition for certification. We have now had the benefit of the parties' oral argument, examined their briefs and analyzed the record. The issues that motivated our granting certification remain. *Cf. In re Route 280 Contract,* 89 *N.J.* 1 (1982) (explaining why the grounds for certification did not exist). Instead of discussing and responding to the questions, the Court has vacated certification as improvidently granted. The state of the law remains uncertain and indeed, the result, an affirmance of the judgment below, was arrived at on erroneous factual assumptions and mucks up the title to three properties. I dissent from the order vacating certification under these circumstances.

The trial court entered a final judgment for the plaintiffs on the return day of an order to show cause and granted a permanent injunction. It had before it only plaintiffs' verified complaint and a certification of defendant Stephen Danis. The Appellate Division affirmed substantially for the reasons expressed by the trial court in its oral opinion.

It is undisputed that plaintiffs Leo H. Mahony and Edward Samuelsen and defendant Stephen Danis were the sole stockholders of 3530 Realty Corp. (Corporation), a New Jersey corporation. A controversy arose among the three, resulting in litigation and a court order to sell a building owned by the Corporation and located in South Brunswick, New Jersey, and to distribute the proceeds to the three stockholders.

Subsequent to that order, the defendants, Stephen Danis and his wife Claire Danis, notified the plaintiffs to stop using property adjacent to that of 3530 Realty Corp., owned by the defendants, for parking and for an access road to New Road. The following map depicts the location of the properties involved:

The Corporation's office building is on lot 24–D; a gasoline station is on lot 24–C; and defendants, Stephen and Claire Danis, own lot 23, on which their marital home and his real estate business are situated. The Danises also own lot 24–E. Lot 23 is approximately 214 feet deep. It is asserted that the rear 48 feet of that lot (marked "A") have been used for parking by occupants and visitors to the office building. The office building fronts on Route 27, which serves as a means of ingress and egress. The dotted lines on lot 24–E designate a means of access from the office building to New Road.

The plaintiffs alleged that the South Brunswick Board of Adjustment granted 3530 Realty Corp. a variance from total area, depth, width, rear yard and front set back requirements on the conditions that a rear part of lot 23 could be used for parking and lot 24–E could serve as an access road. The plaintiffs claimed that the Board had inserted these conditions after representations by defendant Stephen Danis sanctioning such uses of lot 23 and lot 24–E. The Board of Adjustment had initially denied the Corporation's application for a variance, but had granted the Corporation's second application subject to the following conditions:

1. Parking facilities shall be in accordance with plans submitted subject to the approval of the Planning Board.

. . . .

4. The applicant is to encourage the use and keep open the access road in rear of premises so that the principal flow of traffic to and from premises will be via access road to New Road as indicated on plot plan.

Stephen Danis denied in his answering certification that any part of lot 23 was to be used for parking facilities for the office building. He attached to his certification a plan that he claims was submitted to the Planning Board, which showed no offsite parking spaces. Danis also claimed that the plaintiffs participated in the corporate venture before the Planning Board approval was obtained and did not rely on any representations he, Danis, may have made. Danis also certified that the use of part of lots 23 and 24–E was at the discretionary will of his wife and himself.

The trial judge stated that no factual issues needed to be resolved and that the Corporation had acquired an easement with respect to the parking facilities and access road to New Road consistent with the resolution of the Planning Board. There are a number of deficiencies in this reasoning.

First, there is no proof that Claire Danis was present at the Board of Adjustment hearings. At oral argument counsel stated that she was not. As an owner of lots 23 and 24–E (titles were in the names of both Stephen and Claire Danis), it is difficult to ascertain how her interest could be subordinate to an easement. There was no evidence that she knew or should have known of what use, or the extent of that use, 3530 Realty Corp. was making of the access road or the rear part of the marital property. Whatever the use, it occurred at most over a 15-year period, so that even if her permission or acquiescence existed, the 20-year prescriptive period within which an easement might be acquired had not elapsed.

Second, there is an express denial that the parking facilities referred to by the Board of Adjustment were located on the Danis property. I also note in passing that the parking facility plans were subject to the approval of the Planning Board. The record is silent as to the action taken by that body, other than as stated in Mr. Danis' certificate.

Third, the condition concerning the access road does not constitute a grant of an easement by Mr. and Mrs. Danis to anyone. Under this condition, the 3530 Realty Corp. is "to encourage the use and keep open the access road" in the rear. This is not the language of a grant or conveyance. Locations, width, length and duration are missing. Even if the degree of definiteness necessary to establish an easement were present, the privilege may be nothing more than a license. These comments are similarly applicable to the alleged easement for parking.

Plaintiffs have strived to uphold the permanent injunctions on the theory that an easement was created by estoppel, the ground

relied upon by the trial court. They contend that such an easement was created by a representation to the plaintiffs as promisees, believed by the promisees, and relied upon by the promisees. Plaintiffs cite no New Jersey authority for this proposition.

An easement is an incorporeal interest in land, entitling one person to make some use of another's property; the interest must be a property right protected against the possessor and others. 2 *American Law of Property* § 8.5, p. 232 (1952). The *Restatement of the Law of Property* § 450 (1944), defines an easement as

an interest in land in the possession of another which
> (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;
> (b) entitles him to protection as against third persons from interference in such use or enjoyment;
> (c) is not subject to the will of the possessor of the land;
> (d) is not a normal incident of the possession of any land possessed by the owner of the interest, and
> (e) is capable of creation by conveyance.

Easements come into being (1) by an express act of the parties, (2) by implication, or (3) by prescription. J. Cribbet, *Principles of the Law of Property* 336 (2d ed. 1975). In the first category easements are created by an express conveyance in writing. Oral agreements run afoul of the Statute of Frauds, *N.J.S.A.* 25:1–1, and are considered revocable parol licenses. *Hetfield v. Central R.R. Co.*, 29 *N.J.L.* 571, 573 (E. & A.1862).

Excepted from this rule of an express written conveyance are easements arising out of prescription. Easements by prescription arise when elements similar to those of adverse possession are shown to have existed for a 20-year period. *Baker v. Normanock Ass'n, Inc.*, 25 *N.J.* 407, 419 (1957); *A.J. and O.J. Pilar, Inc. v. Lister Corp.*, 22 *N.J.* 75 (1956); *Felici v. Pennsylvania-Reading Seashore Lines*, 83 *N.J.Super.* 373, 377 (App.Div. 1964).

Easements may also come into being by implication. When a landowner uses one part of his land to benefit another part, an

implication of an easement may arise upon severance of the parts. J. Cribbet, *Principles of the Law of Property* 338 (2d ed. 1975). Such an easement may be ascribed to an implied grant or implied reservation. Some courts do not distinguish between the two and imply an easement whenever it is reasonably required for enjoyment of the land. This is akin to an easement implied by necessity which, according to some authorities, *Restatement of the Law of Property* § 476(e) comment g (1944), comes within the framework of an easement by implication. The basic principle upon which such easements are founded is that the parties to the conveyance are presumed to act with reference to the actual, visible and known condition of the properties at the time of the conveyance and intend that the benefits and burdens manifestly belonging respectively to each part of the entire tract shall remain unchanged. *Blumberg v. Weiss,* 129 *N.J.Eq.* 34 (E. & A.1941); *Boylan v. Loy Corp.,* 128 *N.J.Eq.* 460 (Ch.), aff'd, 130 *N.J.Eq.* 203 (E. & A.1941).

Plaintiffs have not established that these defendants executed an express grant or that an easement arose by implication or by prescription. As previously noted, the plaintiffs claim and the trial court and Appellate Division agreed that they have acquired an easement by estoppel because the defendant Stephen Danis had represented to the Board of Adjustment and to the plaintiffs that the defendants' adjoining properties could be used for parking and as a means of ingress and egress to New Road; that the plaintiffs had relied upon that representation by constructing an office building; and that defendants' revocation would render the building inoperable.

Counsel for both parties have been unable to produce a reported New Jersey decision of this Court or the Court of Errors and Appeals in which an easement was established by estoppel. Nor have I uncovered such a case. Some commentators and courts have referred to an easement by estoppel. *Foldeak v. Incerto,* 6 *Conn.Cir.* 416, 274 *A.2d* 724 (1970); *Allee v. Kirk,* 602 *S.W.*2d 922 (Mo.Ct.App.1980); *Canterbury Shores Ass'n v. Lakeshore Properties, Inc.,* 18 *Wash.App.* 825, 572 *P.*2d

742 (1977); 2 G. Thompson, *Commentaries on the Modern Law of Real Property* § 357 (1980 & 1981 cum. supp.); 3 *R. Powell, The Law of Real Property* ¶ 411 (1983); J. Cribbett, *Principles of the Law of Property* 337 (2d ed. 1975). The following elements may be distilled from these sources. There must be shown as to the party estopped: (1) conduct that amounts to a false representation, or concealment of material facts, or conduct that conveys the impression that the facts are inconsistent with those that the party subsequently asserts; (2) intention, expectation or reasonable foreseeability that the other party will act as a result of that conduct; and (3) knowledge of the true facts. As to the party asserting the estoppel: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such character that his position has changed prejudicially. *Central R.R. Co. v. MacCartney*, 68 *N.J.L.* 165 (Sup.Ct.1902); *Musconetcong Iron Works v. Delaware, Lackawanna & Western R.R. Co.*, 78 *N.J.L.* 717 (E. & A.1910); 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 805, at 191–92 (5th ed. 1941).

These criteria have been applied to establish equitable interests in land. *Sumner v. Seaton*, 47 *N.J.Eq.* 103 (Ch.1890), is a case in point. The City of Elizabeth decided to straighten Rahway Avenue, a public street. In accomplishing that the City cut off from properties on the north side a strip of land formerly in the northerly half of the street and left it on the south side. The owner of the land that previously abutted the street on the south then had a strip of land separating the front of his property from the street. The plaintiff, successor in interest to the southerly owner, obtained a permanent injunction restraining an ejectment action instituted by the owner of the land on the northerly side of the road. The proofs showed that plaintiff's predecessor, after complaining to the town that no compensation was paid for the loss of frontage, abandoned opposition to a special assessment in the belief that she had equitable title in the strip cut off from the north-side owner. The north-side owner in turn gave a general release "on account of

the taking and appropriating land and real estate for straightening Rahway Ave." The plaintiff later erected a costly dwelling on the land, grading and sodding the strip and building an expensive fence along the line of the street.

Vice-Chancellor Pitney held that an estoppel by acquiescence and silence arose. He found that the plaintiff's predecessor honestly believed she was the owner of the land and acted on that erroneous belief, and that the other party sat idly by during construction of improvements on the questioned property. The Vice-Chancellor acknowledged that in general record notice of title is sufficient to defeat an estoppel, but that here the plaintiff acted in good faith on an erroneous supposition as to title. The Vice-Chancellor concluded that "[i]f ever there was a case in which the duty of the party to speak was clear, it seems to me it was this case," adopting the following language of *Ramsden v. Dyson, L.R.–E. & I.App.* 129, 141 (1866):

[A] Court of equity ... considers that, when [the one party] saw the mistake into which [the other party] had fallen, it was [his] duty to be active and state [his] adverse title; and that it would be dishonest in [him] to remain wilfully passive on such an occasion, in order afterwards to profit by the mistake which [he] might have prevented.

See *also Polakoff v. Halphen,* 83 *N.J.Eq.* 126 (Ch.1914) (where lessor of property on which a store building was located permitted lessee in writing to build an addition in the rear and then attempted to revoke the license after the building was substantially completed, court refused relief by applying essential principles of equitable estoppel); *Jarman v. Freeman,* 78 *N.J.Eq.* 464 (Ch.1911) (where exclusive holder of easement in alleyway leading to street remained silent while owner of neighboring landlocked parcel constructed warehouse at alleyway's end, court refused to enjoin neighbor's use of alley to haul goods to and from warehouse), rev'd, 80 *N.J.Eq.* 81 (Ch.) (in part because of later factual finding that neighbor knew when he erected warehouse that easement holder would contest his use of alleyway), rev'd on other grounds, 112 *N.J.Eq.* 308 (E. & A.1912).

The Vice-Chancellor also reminds us that courts of equity do not in all cases push estoppel to the extent of passing the

equitable title, but in proper cases permit the owner of the legal title to hold possession upon compensating the innocent party who made improvements upon the erroneous supposition. I would also suggest that the innocent party under some circumstances should be entitled to retain possession, particularly in the case of an easement, upon compensating the legal title owner for the value of the easement.

The difficulty with the instant case is that we do not know the facts. We were advised at oral argument that the building was a two-story structure, originally with some offices on the second floor and a restaurant on the first floor. Some time thereafter the restaurant was closed and the first floor converted into offices. We are not aware of whether this change in occupancy eliminated the need for any offsite parking or for an access to New Road. We do not know to what extent the access road was used. We have no information whether a rear portion of lot 23 was paved; if so, when it was paved; if it was used by Mr. Danis' real estate customers; if it was used by occupants or invitees of the office building and the extent of any such use. We have no testimony or affidavits disclosing Claire Danis' knowledge of the facts or other indicia why her interests should be foreclosed, keeping in mind that the 20-year prescriptive period had not run. We do not know what the understanding was among the three principals of 3530 Realty Corp. with respect to the access road or the rear of lot 23. What writings passed? What conversations were held? 3530 Realty Corp. was represented by an attorney before the Board of Adjustment. Did he know that no written easement would be forthcoming and that the Danis' consent was only a license? In short, there were insufficient proofs before the trial court to justify finding an easement by equitable estoppel against each defendant. In this respect it should be noted that an interest in real property through an estoppel *in pais* usually requires that the several elements of estoppel be clearly and convincingly demonstrated. *Weiland v. Turkelson*, 38 *N.J.Super.* 239, 249 (App.Div.1955).

The result of the majority's decision is to raise a cloud on the titles to three properties. Is the easement judicially determined in favor of 3530 Realty Corp. subject to modification by the South Brunswick Board of Adjustment? What is the width of the access road easement and where and when does it terminate? As a further word of caution, I wonder if easements may arise in this manner, there being no structures, improvements, or other indicia that would alert an observer that any encroachments exist. How would purchasers of any of the three parcels involved know of or be alerted to these easements in the absence of a judgment of record? *See Camp Clearwater, Inc. v. Plock,* 52 *N.J.Super.* 583, 598–99 (Ch.Div.), aff'd, 59 *N.J.Super.* 1 (App. Div.1958); *National Silk Dyeing Co. v. Grobart,* 117 *N.J.Eq.* 156, 163 (Ch.1934); M. Lieberman, 13A *New Jersey Practice* § 1582, at 105–06 (3d ed. 1966).

The concurring opinion's factual recitations differ from my understanding of the facts based on my reading of the record. Contrary to the implication in the concurring opinion, recognizing interests in land created by estoppel is of legal significance in the real world involving titles.[1] It is not clear to me why the importance of creating an easement in *land* by "traditional, well-understood principles of equity," *ante* at 51, is not significant in our jurisprudence. Nor do I comprehend its comment that the "interest of justice," *ante* at 52, does not invite our supervision when, on the record before the trial court, the result may well be "wrong, unfair or unjust," *ante* at 52, to one or both defendants, contrary to the assertion of the concurrence. There is no proof that Claire Danis knew of the "arrangement" or derived any advantage from it. Moreover, the Court's decision may muddle up titles to the properties affected. I also disagree that "[t]he rights of . . . an unwary public . . . are not" implicated by this decision, *ante* at 52; if interests in land may be obtained and sanctioned on showings such as made in

---

[1]The discussion is not, I submit, one of abstract niceties ("noetic perjinkities"), as the concurrence suggests.

this case, I fear for the uncertainties faced by innocent purchasers of properties. I continue to adhere to the view that once certification has been granted, oral argument held, and the matter conferenced, we should proceed to adjudicate the cause, particularly if the result has not been reached properly and may be inequitable and unjust. *See Brown v. Lins Pharmacy,* 67 *N.J.* 392, 399 (1975) (Schreiber, J., dissenting).

Equity and fairness dictate that the judgment be reversed and the cause remanded for a plenary hearing so that all the facts may be fully developed. It is only in that fashion that a court may mold a proper remedy, if one is forthcoming.

HANDLER, J., concurring in the result.

*For dismissal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For reversal and remandment*—Justice SCHREIBER—1.