A. J. AND J. O. PILAR, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LISTER CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued May 28, 1956—Decided June 25, 1956.

Mr. *Sanford Freedman* argued the cause for appellant (Mr. *C. Wallace Vail,* attorney; Mr. *Freedman* of counsel).

Mr. *Alan V. Lowenstein* argued the cause for respondent (Mr. *Howard T. Rosen* of counsel).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   The Appellate Division opinion, 38 *N. J. Super.* 488 (1956), reverses the Chancery Division judgment establishing an easement of right of way over defendant's lands in favor of plaintiff's lands.   The trial judge based the judgment upon findings that the easement arose by prescription from adverse user for more than 20 years and also that it had been acquired by implied grant

from the former common owner of both tracts. We granted plaintiff's petition for certification, 21 *N. J.* 128 (1956).

The defendant's tract lies back of plaintiff's tract, which is at Chapel Street and Lister Avenue in Newark. The two tracts at one time formed a single parcel owned by Factory Associates, Inc. The severance was made in 1927 when Factory Associates sold the plaintiff's tract to John O. Pilar and reserved in the deed a right of way from Lister Avenue along one side of the Pilar tract. Title came into the plaintiff corporation a few years later when John O. Pilar, now deceased, and his brother Anthony J. Pilar incorporated the business conducted there. Factory Associates sold the remainder of the original parcel to defendant Lister in 1953.

Near the boundary separating the two tracts at the back of the Pilar land the Pilar buildings have loading platforms opening upon a railroad siding which runs laterally within the Pilar tract along that boundary line and crosses the reserved right of way.

Trucks as well as railroad freight cars receive and deliver freight at the platforms. The narrow space on the Pilar tract between the railroad siding and the boundary line is insufficient for the passage of trucks coming up the right of way from Lister Avenue bound for the platforms standing furthest from the right of way. Trucks were therefore driven across the railroad siding and the boundary line onto Lister land where, after turning left, they proceeded to points opposite the platform of destination and were maneuvered into a turn and then backed to the specific platform, usually coming to rest astride the tracks of the siding.

Trucks of suppliers and deliverymen receiving or delivering Pilar freight or that of its tenants have followed this practice since 1927; indeed, there was evidence that before 1927 trucks of suppliers of a tenant of Factory Associates in the Pilar buildings (which were built at least as early as 1895) followed the same practice.

The easement established by the Chancery Division judgment was of this right to pass over Lister lands to the Pilar platforms from the right of way from Lister Avenue.

This use of this part of the Lister lands to reach the Pilar platforms is not the only use which was made of that area by others before Lister stopped the practices in 1954. The area was also used indiscriminately for decades, by any one who wished, for parking cars, and on occasion as an outdoor storage space. Such was the use of the area not alone by Pilar and its officers and employees and tenants, but also by residents generally of the neighborhood, who parked, repaired and polished their automobiles there and even stored them for weeks at a time. The testimony stands uncontradicted that such uses were tolerated without objection by successive owners of the Lister tract for many years before the Pilar purchase in 1927. It was said, "Everybody used it," "it was like a public parking lot," every one was "welcome," it was "free."

The Lister corporation itself tolerated such uses for a time and stopped them only when a neighboring concern whose land was used in like manner fenced in its lands and the use of the Lister land became so extensive that parking there became a matter of "pot luck" and caused serious inconvenience to Lister and its tenants and invitees. Lister then sent registered letters to companies and persons in the neighborhood notifying all to stop parking in the area. It is significant for the purposes of this case that Pilar complied promptly upon receipt of the notice sent to it.

And Pilar had also twice before been prompt to comply when similar requests to discontinue use of the area were made by Factory Associates during its ownership of the Lister tract. The first time was in 1935 when Pilar was using the area as a storage place for machinery. An officer of Factory Associates testified that he said to John O. Pilar on that occasion, "I let you park there and do everything you want, and after all, we are friends, and it disturbs the tenants. Please remove the machinery," to which Pilar replied, "All right, you have been friendly with me and I will remove it." The second time was in 1951 when Pilar acceded to a request to discontinue the parking of its trucks on the area.

Too, Pilar and Factory Associates dealt with one another in a spirit of friendly neighborliness and mutual cooperation while they were neighbors. In 1950 Factory Associates allowed Pilar free storage space in one of the buildings on the Lister tract. In 1947 Pilar permitted Factory Associates to place a water meter in a Pilar building; at that time, according to the testimony, John O. Pilar said, "We always get along; you permit us to park our cars along back there, and I dont see why you shouldn't have permission to hang the water meter." Pilar also furnished free watchman service for a Factory Associates building. And both parties helped one another in matters of leasing and other realty transactions.

It was this background of general user by the neighborhood of the area, and the instances of Pilar's recognition that the owner of the Lister tract had the right to require Pilar to desist from using it, together with the coloring upon the situation to be inferred from the reciprocal exchanges of favors between Pilar and Factory Associates, that led the Appellate Division to disagree with the finding of the trial judge that the use of the area by trucks bound for the Pilar platforms was hostile and adverse. The court said, at 38 *N. J. Super., supra, p.* 494:

"While we are conscious of the deferential regard to be accorded the factual findings of the trial judge, we are quite definitely of the opinion from the circumstances disclosed by the evidence that the continued use by the Pilars of the vehicular approach to their buildings over the land to the immediate north of the railroad siding was not during the requisite period a defiant, hostile, and adverse appropriation by the Pilars. Assuredly a user to be recognized in the law as adverse must be shown to have been, *inter alia,* hostile. * * * Rather would the use disclosed by the evidence in the present case appear to have been indulgent and permissive in character."

Our examination of the record brings us to the same conclusion. We may pass over the contention of the defendant that the situation is strongly suggestive of a claim of user by Pilar simply as a member of the public in common with others, not to be recognized as adverse because within our holding in *Poulos v. Dover Boiler & Plate Fabricators,*

5 *N. J.* 580 (1950). Too, we may agree with the trial judge that the testimony as to the alleged statements of the deceased John O. Pilar "is not impressive," and therefore that there is no evidence that the use was expressly permitted by the owner. Yet, as was said in *Predham v. Holfester, 32 N. J. Super.* 419, 423–424 (*App. Div.* 1954), "The descriptive import of the adjective 'hostile' has been said in the * * * cases * * * to mean a user *under a claim of right,* pursued *with an intent to claim as against the true owner* in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by the claimant before the period of adverse possession has elapsed." Pilar's recognition on at least three occasions, in 1935, 1951 and 1954, that the owner had the right to terminate its use of the area for storage and parking, so belies the claim now made of a right of user for passage of trucks to and from the platforms as plainly to negative any inference that such use was hostile and adverse. It is contended that the use as a highway to the platforms differs from the uses for the storage of machinery and the parking of trucks and cars. That is true, but the difference avails plaintiff nothing on the issue whether the use in question was hostile and adverse. There is no evidence whatever differentiating Pilar's several uses on that score, and such is the sanctity of the title of the true owner recognized in the law "that a single lisp of acknowledgment by the [claimant] that he claims no title, fastens a character upon his position which makes it unavailable for ages." *Colvin v. Burnett,* 17 *Wend.* (*N. Y.*) 564, 569 (1837).

In the circumstances shown by this record there is no basis for a conclusion that the true owner should have believed that Pilar's recognition of its title was qualified by a claim of Pilar that such recognition did not apply in respect of the asserted burden to suffer the passage of the trucks to the platforms. The inference more reasonably to be drawn from the proofs is that Pilar knew and recognized that all of its uses of the area were permissive or by sufferance merely. See *Weber v. Gerber Holding Co.,* 138 *N. J. Eq.* 544 (*Ch.*

1946); *Cobb v. Davenport*, 32 *N. J. L.* 369, 387 (*Sup. Ct.* 1867).

■■ The plaintiff leans heavily upon the presumption of adverse user said to arise from the fact that the passage over the area was notorious, continuous and apparent for well over 20 years. *Plaza v. Flak*, 7 *N. J.* 215, 221 (1951). But assuming the existence of a factual basis from which the presumption might arise, a matter not wholly without doubt, the presumption has no artificial evidential weight but simply stands in the place of proof of hostility until the contrary is shown. The benefit of the presumption did not relieve Pilar of its burden to prove hostility after Lister adduced substantial evidence contrary to the presumption and, Pilar having offered nothing more, the most favorable view for its position is that the proofs in their entirety presented a fact question whether the thrust of the evidence showed a hostile and adverse use or a permissive use. See *In re Blake's Will*, 21 *N. J.* 50, 58–59 (1956). We think, as did the Appellate Division, that this issue of fact must be resolved against the plaintiff.

■ There remains the question whether the easement was created by an implied grant from Factory Associates at the time of the severance of the parcel in 1927 when Pilar acquired its tract. Judge Jayne's opinion treats fully as to the law in this regard, 38 *N. J. Super, supra, pp.* 495–500, and we adopt what is there said without further elaboration. Especially pertinent is the fact that the user lacks those qualities of apparency and permanency essential under our cases to the creation of an easement by implied grant. This is illustrated by the experience of the licensed surveyor retained by defendant to survey the tract. He was on the tract for three or four days, and among other things connected with the survey examined for visible evidence of interests not appearing of record. He testified that during that time he saw some cars parked and "evidence of car tracks of parked cars," also "a few lines going in the direction" of the Pilar platforms, but at no time saw any trucks either passing over the area from the right of way from Lister

Avenue or backed up to the Pilar platforms. It does not appear that the circumstances differed when Pilar purchased in 1927, as of which time it is said the grant should be implied, and plainly a use not noticeable or discoverable in an inspection purposely and efficiently made to ascertain the existence of interests not of record lacks those qualities of apparency and permanency which must be shown before the law implies an intention of the parties to fasten the burden thereof upon the title.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER and BRENNAN—3.

*For reversal*—Justices OLIPHANT and JACOBS—2.