3 A.3d 584 (2010)
416 N.J. Super. 113
Jeanne YELLEN, Individually and As Executrix of the Estate of Dwight Yellen, Plaintiffs-Appellants,
v.
Isaac J. KASSIN and Margarette Kassin, H/W, Defendants-Respondents, and
Salim Assa and Ezak Assa, Defendants.
Docket No. A-5596-08T3
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2010.
Decided August 27, 2010.
*586 Martin J. Arbus, Ocean, argued the cause for appellants.
Mark A. Steinberg argued the cause for respondents.
Before Judges CUFF, PAYNE and WAUGH.
The opinion of the court was delivered by
CUFF, P.J.A.D.
Plaintiffs Jeanne Yellen and the Estate of Dwight Yellen appeal from an order recognizing reciprocal prescriptive easements over the driveway on their property to Ocean Avenue in Deal and over the driveway of defendants Isaac J. Kassin and Margarette Kassin to Roosevelt Avenue in Deal. A prescriptive easement requires continuous adverse use over thirty years. We reverse because the facts as found fail to satisfy the legal requirements of mutual prescriptive easements over the parties' driveway.
Plaintiffs own real property designated as Lot 2.03, Block 13 on the municipal tax map, also known as 60 Ocean Avenue in Deal. Jeanne Yellen lived with her now-deceased husband Dwight in the house on the property since they bought it in November 1970. Defendants[1] own real property designated as Lot 2.02, Block 13 on the tax map, also known as 48 Roosevelt Avenue in Deal. The lots have a common boundary. Defendants have resided in the house on Lot 2.02 since July 1975.
The record reveals that the property owned by plaintiffs and defendants had been a single parcel of property owned by Molly Bess prior to November 1964. The record does not reflect the circumstances under which the property was subdivided into the two lots now owned by the parties. The trial record also does not reflect the history of the title to these properties or the structures that may have existed on them prior to the conveyance by Bess, the common owner, to defendants' immediate predecessors-in-title, Phillip and Lorraine Newman.
The March 23, 1977 survey (the 1977 survey) is based on a 1964 survey prepared contemporaneously with the transfer from Bess to the Newmans. A single driveway appears on both surveys that provided Bess with access to both Ocean Avenue and Roosevelt Avenue. Bess conveyed title to Lot 2.02, the lot currently owned by defendants, to the Newmans on November 19, 1964. The deed of conveyance did not reserve to the common owner an easement across the Newmans' property. This deed also did not convey to the Newmans an easement across the remainder retained by Bess, which is now the property owned by plaintiffs. Furthermore, the 1970 deed from the common owner to plaintiffs did not convey any easement rights across the Newmans/Kassins' property and did not except from the fee simple title an easement across Lot *587 2.03 to Ocean Avenue running in favor of the owners of that property.
Defendants' property fronts Roosevelt Avenue. Plaintiffs' property has 51.55 feet of frontage on Ocean Avenue. The driveway that traverses plaintiffs' lot provides direct access to Ocean Avenue. The driveway that traverses defendants' property provides direct access to Roosevelt Avenue. Each lot has frontage on a street; therefore, there is no need for the respective owners of these properties to travel across the other's property to gain access to a street. Nevertheless, the driveways of each property meet at the common boundary of each lot and form a continuous driveway that makes it physically feasible to access each property from either Roosevelt Avenue or Ocean Avenue.
The record reveals and the judge found that the Newmans, defendants' immediate predecessor in title, and plaintiffs used the interconnected driveways by agreement to access both streets. The record also reveals that they mutually agreed to use the access point provided by the other driveway as an exit. The record also reflects a history of mutual use of the driveways in both directions with plaintiffs periodically traversing defendants' property to access Roosevelt Avenue and defendants intermittently traversing plaintiffs' lot to access Ocean Avenue.
This mutual use was not without interruption. Jeanne Yellen and Margarette Kassin testified that they periodically parked cars along the common boundary to prevent access to their respective driveways. When snow fell, the person hired by plaintiffs to plow snow piled it along the boundary and blocked passage. There is also an ornamental wrought iron gate close to Roosevelt Avenue on defendants' property. Sometime after 1977, defendants installed a pool and realigned the driveway. In doing so, they did not consult with, or seek the permission of, plaintiffs to alter the location and course of the driveway. Margarette Kassin testified that she did not believe she needed permission to relocate the driveway or to place the gate on the property line because the work was done on her property. The record does not reflect the duration of this work and the length of time plaintiffs' use of the driveway was interrupted by this work.
Following completion of the pool, defendants also erected a second gate close to Roosevelt Avenue. The record supports a finding that the ornamental gate is almost always open, but defendants placed a lock on the gate along the lot line without providing a key to plaintiffs. Jeanne Yellen and Margarette Kassin provided contradictory testimony regarding the length of time the gate was locked, but it is clear that the gate was locked for at least a week. Each admitted that the existence of the gate, even when unlocked, required anyone using the other's driveway to stop to open and then close the gate before they could proceed over the property. Furthermore, Jeanne Yellen and Margarette Kassin agreed that since the mid-1980s each has used of the driveway almost exclusively as an exit. In other words, plaintiffs use the driveway on the Kassin property only as an alternative exit, and the defendants use the driveway on the Yellen property only as an alternative exit.
Plaintiffs filed a complaint seeking a declaratory judgment that no easement existed across their property or across defendants' property. As noted by the trial judge in his oral opinion, this action was initiated when plaintiffs signed a contract to sell their property, and the buyer sought assurance that defendants would not seek to use the driveway to access *588 Ocean Avenue.[2] Defendants filed a counterclaim alleging breach of a September 26, 2007 settlement agreement.[3]
At trial, plaintiffs argued that the access enjoyed by both parties across their respective properties was based on the mutual consent of the parties. Defendants contended that the use of the driveways is derived from mutual prescriptive easements.
The trial judge recognized that the deeds from the common owner, first to defendants' predecessor-in-title and then to plaintiffs, did not contain an easement over the driveways of the adjacent properties for access to Roosevelt Avenue and Ocean Avenue, respectively. Thus, he posed the questions for resolution as "whether this constitutes a prescriptive easement. Is it a revocable license, rather than an easement? Is it a parole consent to enter upon land, which amounts only to a license, which means, of course, that you can revoke it." In addressing those competing positions, the trial judge found that the parties had each traversed the other's property without objection for thirty years. Consequently, the trial judge concluded that the parties accepted that course of conduct and "they both understood that they each had the right to pass through the other's property, not as a common driveway, but as a way of utilizing access across the other's property...." He further found that the mutual conduct and acquiescence of the parties resulted in the creation of "mutual prescriptive easements as they [ha]ve existed since, at the very least, 1970 and even 1975 would [not] make much difference. There would be [thirty] years there anyway, and many more."
Our standard of review of the findings of fact of a judge sitting without a jury is well known. We review the record to determine whether the facts as found by the trial judge are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). If we find that is the case, we proceed to determine whether the judge properly applied the law to the facts as found. Ibid. We owe no deference to the trial judge's interpretation of the law or his application of the law to the facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). We review questions of law de novo. Here, many of the facts found by the trial judge are supported by the record. We disagree, however, with his interpretation of the legal significance of those facts.
In order to establish an easement by prescription, a litigant must prove elements similar to those associated with adverse possession. Mahony v. Danis, 95 N.J. 50, 58, 469 A.2d 31 (1983) (Schrieber, J. dissenting); Baker v. Normanoch Ass'n, 25 N.J. 407, 419, 136 A.2d 645 (1957); Randolph Town Ctr., L.P. v. County of Morris, 374 N.J.Super. 448, 455, 864 A.2d 1191 (App.Div.2005), aff'd in part and vacated in part, 186 N.J. 78, 891 A.2d 1202 (2006); Felici v. Pennsylvania-Reading Seashore Lines, 83 N.J.Super. 373, 377, 200 A.2d 126 (App.Div.1964). Thus, the proponent of an easement by prescription must prove an adverse use of land that is visible, open and notorious for at least thirty years. Randolph Town Ctr., supra, *589 374 N.J.Super. at 453-54, 864 A.2d 1191. See also Restatement (Third) Property: Servitudes § 2.17 (2000). The proponent of the easement must establish the elements by the preponderance of the evidence.[4]Patton v. N. Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 187, 459 A.2d 1177 (1983).
A use is adverse or hostile if a person uses the property of another under a claim of right,
pursued with an intent to claim against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by claimant before the period of adverse possession has elapsed.
[A.J. and O.J. Pilar, Inc. v. Lister Corp., 22 N.J. 75, 80, 123 A.2d 536 (1956) (quoting Predham v. Holfester, 32 N.J.Super. 419, 424, 108 A.2d 458 (App.Div.1954)).]
Accord Baker, supra, 25 N.J. at 420, 136 A.2d 645.
In Baker, the plaintiffs' claim to an easement by prescription to use the waters of a lake for recreational purposes failed because none of the prior users of the lake testified that they considered their prior use "to be of right." Id. at 420-21, 136 A.2d 645. Their prior use, therefore was not hostile. Id. at 421, 136 A.2d 645. Similarly, in Pilar, supra, when the facts revealed a "background of general use[] by the neighborhood" and user recognition of the right of the owners to restrict use of its property and a pattern of "reciprocal exchanges of favors," the hostility element is not established because the so-called adverse use was not under a claim of right. 22 N.J. at 80, 123 A.2d 536. The Court agreed that the use made of the other property was no more than "indulgent and permissive in character." Ibid.
Later, the Court held that entry and continued possession need not be "accompanied by a knowing intentional hostility" and "that any entry and possession for the required time which is exclusive, continuous, uninterrupted, visible and notorious, even though under mistaken claim of title, is sufficient to support a claim of title by adverse possession." Mannillo v. Gorski, 54 N.J. 378, 387-88, 255 A.2d 258 (1969). This test, however, requires more than mere use of the property of others. The person or entity asserting an easement by prescription must still claim a right to use the property of another. Baker, supra, 25 N.J. at 419-20, 136 A.2d 645; Pilar, supra, 22 N.J. at 80-81, 123 A.2d 536. Indeed, the continuing vitality of this element of the test is underscored by this court's reliance on Pilar in Randolph Town Center, supra, 374 N.J.Super. at 456-57, 864 A.2d 1191, and the Supreme Court's affirmance of that portion of our opinion, Randolph Town Center, supra, 186 N.J. at 80, 891 A.2d 1202.
Open use generally means that the use is not secret. Randolph Town Ctr., supra, 374 N.J.Super. at 457, 864 A.2d 1191; Restatement (Third), supra, § 2.17 comment h. Notorious "generally means that the use is actually known to the owner, or is widely known in the neighborhood." *590 Restatement (Third), supra, § 2.17 comment h. The term "open and notorious" is often used in the conjunctive, the requirements are disjunctive. Ibid.
The adverse use must also be over a period of thirty years. This requirement is often phrased in terms of continuity of use over the prescriptive term. The Restatement provides that this requirement has two aspects. The first is the mental aspect that "requires that the prescriptive user remain in an adverse posture to the holder of the servient estate throughout the prescriptive period." Restatement (Third), supra, § 2.17 comment i. The second is the physical aspect that "requires that the use be open or notorious throughout the prescriptive period.... Seasonal uses, intermittent uses, and changing uses all may meet the continuity requirement so long as they are open or notorious." Ibid.
Applying these principles to the facts of this case, we hold the evidence establishes that the use by each of the other's driveway was open and notorious, and perhaps, for a period of at least thirty years.[5] The evidence does not establish that the use of the driveways was hostile in the sense that either party considered use of the other's driveway under a claim of right with the intent to claim an interest in the other's property. Plaintiffs clearly did not use the defendants' driveway in a manner that even suggested that they had a claim of right to do so. The record is barren of any evidence that plaintiffs objected to the relocation of the driveway or to the installation of the gate along the property line. They requested that defendants restrict their use of plaintiffs' driveway as an exit only because the lights from cars using the driveway as an entrance disturbed them. Defendants readily assented to this contraction of use. Plaintiffs believed they could park a car along the property line and block passage through the driveway, and defendants did not object.
Similarly, defendants relocated the driveway to accommodate the pool they installed and did not seek permission from plaintiffs because it was their property, and they could do as they pleased on it. Plaintiffs were not consulted and did not expect to be consulted on the location of the driveway. Defendants installed another gate in the driveway closer to Roosevelt Avenue without consultation with, or permission of, plaintiffs, and plaintiffs expected neither.
We noted earlier in this opinion the deference with which we treat the factual findings of the trial judge. Here, we do not dispute the findings of fact made by the trial judge but the legal conclusion drawn from those facts. The circumstances of the creation and subsequent use by these neighbors of a driveway that traverses both properties are not recognized by the law as hostile to the property rights of the other, but were at all times permissive in character and subject to alteration as the needs of both neighbors changed over time. The evidence does not establish the requisite element of hostility as that element is defined by the law; therefore, the reciprocal easements by prescription found by the trial judge fail as a matter of law.
We remand to the trial court for entry of an order declaring that neither party *591 has a right to enter upon or cross the other's property.
Reversed and remanded for entry of an order consistent with this opinion.
NOTES
[1] All references to "defendants" in this opinion are to the Kassins. A stipulation of settlement was entered into between plaintiffs and defendants Salim and Ezak Assa.
[2] Plaintiffs filed a prior action to quiet title and for a declaratory judgment that defendants had no right to enter or to traverse their property. This complaint was dismissed without prejudice. Settlement negotiations ensued and plaintiffs filed this action when the negotiations failed to resolve the controversy between the neighbors.
[3] The counterclaim was dismissed prior to trial.
[4] There is authority that the proponent of a prescriptive easement must prove each element by clear and convincing evidence. Meyers v. Pavalkis, 73 N.J.Super. 208, 214, 179 A.2d 534 (App.Div.1962); Mulford v. Abott, 42 N.J.Super. 509, 512-13, 127 A.2d 178 (App. Div.1956); DeBow v. Hatfield, 35 N.J.Super. 291, 297, 114 A.2d 10 (App.Div.), certif. denied, 19 N.J. 327, 116 A.2d 829 (1955). See also Vagnoni v. Gibbons, 251 N.J.Super. 402, 409, 598 A.2d 530 (Ch.Div.1991). In light of Patton, it appears that Meyers has been overruled. The proponents of the prescriptive easement in this case, the Kassins, failed to satisfy either burden of proof.
[5] The record clearly indicates that the use of the driveway by the Newmans and Bess and then the Newmans and plaintiffs can best be described as an oral license for permissive use of the other's driveway. Therefore, the time calculation of a prescriptive easement commenced in 1975 when defendants acquired title from the Newmans. We need not definitively resolve the continuity element due to our disposition of the hostility element.