**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5645-18T1

CHERYL LEONARD,

     Plaintiff-Respondent,

v.

PERA PANTICH,

     Defendant-Appellant.

_____

Submitted July 13, 2020 – Decided August 27, 2020

Before Judges Suter and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Salem County, Docket No. C-000019-18.

Telsey & Telsey LLC, attorneys for appellant (Adam I. Telsey and Kristin J. Telsey, on the briefs).

Cresse & Carr and DeSimone Law Offices LLC, attorneys for respondent (John G. Carr and John G. DeSimone, on the brief).

PER CURIAM

In this quiet title action involving a boundary line dispute between two neighbors, defendant Pera Pantich appeals from an August 14, 2019 Chancery Division order granting judgment after a non-jury trial to plaintiff Cheryl Leonard declaring her the owner of Block 11, Lot 3 in the Township of Elsinboro consistent with a September 27, 2006 survey prepared by Richard C. Waddington (Waddington survey). The court also ordered defendant to remove a fence constructed on the rear of the property and an approximate three-foot portion of a stone driveway that encroached on the front portion of the property, denied plaintiff's claim for money damages and counsel fees, and dismissed defendant's counterclaims sounding in adverse possession and prescriptive easement. We affirm.

I.

Plaintiff has owned and resided at 75 Sinnickson Landing Road since September 29, 2006. When she purchased the property, she obtained the Waddington survey along with a title insurance policy. The Waddington survey contained a notation identifying an "[i]ron pipe found [eighteen] inches deep, iron bars had flush" (Waddington pipe)[1] as the property line of the western side

_____

[1] For purposes of distinction and clarity, we refer to the iron pipe identified in the Waddington survey as the Waddington pipe and the white post near
(continued)

A-5645-18T1

of her lot.  In addition, the survey noted a fence line along the property with a portion of defendant's wire mesh fence located in the rear of the lot.  While it did note the stone portion of defendant's driveway, the Waddington survey did not classify it as an encroachment.

Plaintiff testified that she obtained a $600 financial settlement from her title company "for the loss of property that's shown on the [2006] endorsement," which appears to be the rear fence encroachment.[2]  Plaintiff testified that after she acquired the property, she maintained the portion of the property surrounding the white post.  In this regard, when maintaining the property, plaintiff testified she abided by "[w]hat [she] believed to be the property line, basically pretty much a straight line from the fence over to the road."

Defendant, plaintiff's next-door neighbor, has lived at 79 Sinnickson Landing Road since 1980 and purchased it on February 20, 1981.  On October 26, 2010, plaintiff mailed a letter along with the Waddington survey to defendant

plaintiff's hedges as "the white post."  Plaintiff claimed that the Waddington pipe is the boundary of her property, while defendant alleged that the boundary was identified by the white post, which was closer to plaintiff's house than the Waddington pipe.

[2] On direct examination, plaintiff's counsel referred to the endorsement as "the 2016 endorsement" but the substantive line of questioning, as well as the October 13, 2006 date on the endorsement document itself, clearly referred to the settlement plaintiff obtained as part of the property purchase in 2006.

A-5645-18T1

in which she stated her belief "that [defendant's] fence is over the property line" and asked him to remove the fence. Defendant responded by letter on November 15, 2010, disagreeing with the property line in the Waddington survey and contending that the "real property line" is at the location of a white post near the hedges on the property.

According to plaintiff, defendant replenished his stone driveway in 2015 up to six inches away from the white post, which coincided with the area plaintiff considered to be her property. He also replaced the old wire mesh fence in the rear of the property in favor of a new chain link fence.

In conjunction with a fence plaintiff intended to put up, she obtained a survey prepared by James A. Clancy (Clancy survey) as well as a zoning permit so she "could move forward with installing [a] fence at the correct location" of her property, and more specifically along the fence line. The Clancy survey indicated a "[s]ix-inch encroachment in the back corner." Defendant claimed that he owned that portion of the property and disputed that he extended the width of the driveway in any fashion. As a result of the parties' dispute, plaintiff has not proceeded to install the fence.

On November 7, 2018, plaintiff filed a verified complaint in the Chancery Division, General Equity Part, to quiet title pursuant to N.J.S.A. 2A:62-2

seeking a judgment ordering that plaintiff owns Block 11, Lot 3 as described in the Waddington survey and ordering that defendant vacate same to the extent any encroachment existed. Plaintiff also sought an order for defendant to remove the fence and stone driveway allegedly encroaching on her property, as well as damages for the costs of obtaining the Clancy survey. In response, defendant counterclaimed that he owned the disputed land by adverse possession, N.J.S.A. 2A:14-30, or by a prescriptive easement.

On July 15, 2019, the trial court conducted a bench trial. Plaintiff testified first and, as noted, indicated her belief that defendant's fence and driveway constituted encroachments based on the Waddington and Clancy surveys. She also stated that when she replaced the hedges on the property, she planted them "about five feet away [from the Waddington pipe] knowing the trees were going to extend" and so they "wouldn't cause an encroachment." On cross-examination, she testified regarding a Facebook post in which she indicated that "if people wanted to see where [her] property began, to look for th[e] white marker." When asked by defense counsel why she referred to the white post as her property marker and not the Waddington pipe, plaintiff explained that the white post "was something that was visible and easy to reference versus telling

them to look for the buried . . . property marker underneath the ground you could not see."

Plaintiff's son, Thain Strzelecki, also testified.  He stated that he mowed the grass and "would go along [defendant's] fence and basically continue that line straight out towards the road" beginning around 2006 or 2007 and ending in 2016 and that defendant had never asked him not to do so.  Further, he testified that once defendant had his driveway replenished, he began to mow over stones which he indicated were "installed over the property that [he] used to mow."  At the close of plaintiff's case, defendant moved for involuntary dismissal pursuant to Rule 4:37-2, arguing that because plaintiff had been compensated $600 in a settlement with her title insurance company, she was barred from instituting the quiet title action pursuant to the election of remedies doctrine.  The court reserved its decision on defendant's motion.

Shawn Love, a contractor who had performed work on defendant's house, testified on behalf of defendant.  He indicated that in 2015 or 2016, he replenished the stone "where stone existed in the driveway" but "did not extend the driveway, widen it, lengthen it, or anything."

Defendant contended at trial that both his continuous use of the property and plaintiff's actions confirmed his possessory rights to the disputed portions

of the property. By way of example, he testified that his new fence in the rear of the property was in the same spot as the prior fence which had been up since the 1950s, and that his ex-wife's uncle informed him that the property line was at the "white post." And, he stated that he always thought the hedges were the boundary of the property prior to 2010 because his previous neighbor "never said anything, . . . never told me that wasn't my driveway, . . . never had any issue in the past." Moreover, he testified that if he lost the disputed portion of his driveway, it would have a "huge impact" because he has septic tanks that "have to be about a hundred feet away from the well" on his property, that an oil truck would have to park "in the street [and] pull the hose all the way back" to service his oil tanks, and that "[a] fire truck is not going to be able to get in the driveway" in case of an emergency.

On August 14, 2019, Judge Anne McDonnell issued an oral decision and a corresponding written order entering judgment in favor of plaintiff. The judge declared that plaintiff owned the disputed property "as is specifically described in the metes and bounds description produced by" the Waddington survey. Further, she ordered defendant to "remove the encroachment of the fence at the rear of Block 11, Lot 3 and the encroachment of the stone driveway at the front" of same by September 16, 2019. As noted, Judge McDonnell also denied

plaintiff's claims for damages and attorneys' fees as well as defendant's motion for involuntary dismissal and dismissed his counterclaims.

In support of her decision, Judge McDonnell first concluded that plaintiff's settlement with her title insurer "does not invoke the doctrine of election of remedy" and denied defendant's motion for involuntary dismissal. Further, Judge McDonnell noted that "the Waddington survey shows that the . . . fence encroached at the same point on the rear of plaintiff's property . . . [by] under a foot." And, according to the Clancy survey, "the stone driveway encroache[d] 3.2 feet in width onto [plaintiff's] property at its beginning place at the street and extends to almost the beginning point of [plaintiff's] fence and at that point is 4.3 [feet] wide." The judge found after examining photographs introduced into evidence that there was "a substantially improved stone driveway that extends into the disputed area beyond the now present fence" and that defendant's "opinion that the stone driveway has been the same for [thirty-seven] years" is not supported by the photos.

In addition, Judge McDonnell relied on Mannillo v. Gorski, 54 N.J. 378 (1969), and dismissed defendant's counterclaims concluding that "only when the true owner of the disputed property becomes aware of the minor encroachment along a boundary line can the possession by the next-door neighbor be open and

notorious." In this regard, she noted that "[t]he disputed area is small, and the fact of the intrusion is not clear and self-evident to the naked eye" and that despite defendant's "mistaken belief that his boundary line was up to the hedge row[,] [h]e has never produced a survey to support that position." This appeal followed.

Defendant argues three principal points on appeal. First, he asserts that plaintiff is prohibited from seeking relief from defendant, equitable or otherwise, pursuant to the doctrine of election of remedies because she "chose to be compensated for the loss of [her] land by making a claim pursuant to her policy of title insurance." Second, he contends Judge McDonnell's judgment is against the weight of the evidence. Finally, he maintains the judge misapplied the Mannillo decision. We disagree.

## II.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We owe no deference, however, to a trial court's interpretation of the law, and review issues of law de novo. State v. Parker, 212

9

N.J. 269, 278 (2012); Mountain Hill, LLC v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

We have considered defendant's contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(1)(E). We are satisfied that Judge McDonnell properly granted judgment to plaintiff and dismissed defendant's counterclaims and affirm substantially for the reasons expressed in her August 14, 2019 oral opinion but add the following brief comments to amplify the reasons for our decision.

III.

Turning first to defendant's election of remedies argument, we discern no basis for disturbing Judge McDonnell's principled determination that plaintiff's acceptance of the nominal sum of $600 from her title insurer with respect to the Waddington survey did not preclude her equitable claim that defendant had improperly encroached on both the front and rear of her property.

Initially, we note that defendant failed to introduce any documentary evidence by way of release or otherwise to establish the parameters of plaintiff's settlement with her title insurer. Instead, the sole evidentiary support for his election of remedies claim is plaintiff's trial testimony that she "believed [the

title company] intended" to pay her for the loss in property indicated in their 2006 endorsement. That claim reasonably could be interpreted to address the encroachment at the rear fence line and not the encroachment of defendant's driveway onto plaintiff's property because the Waddington survey indicated only the rear fence as an encroachment on plaintiff's property.

Further, at no point did defendant produce a survey to support any claim that he was the rightful owner of the disputed portion of the property. In fact, defendant testified that when he purchased the property in 1981, rather than obtain a survey, he received an elevation certificate only and based his belief that the portion of the property adjoining his driveway was his property on the previous owner's (his ex-wife's uncle) statement that the "white post" at the corner of the hedges was the property line.

We have noted that though "[t]he doctrine of election of remedies is recognized in New Jersey" it has long ago been "characterized [as] 'a harsh and now largely obsolete rule' and one 'to be strictly confined within its reason and spirit.'" Collins v. U.S. Fidelity & Guar. Co., 384 N.J. Super. 439, 448 (App. Div. 2006) (quoting Schrage v. Liebstein, 16 N.J. Super. 384, 389 (App. Div. 1951)). We have also held "[t]he mere bringing of a suit asking one remedy rather than another practically never affords ground for an estoppel and is not

sufficient reason to deny an application for an alternative remedy." Newark Paraffine Paper Co. v. Dugan, 162 N.J. Super. 575, 578 (App. Div. 1978) (quoting 5A Corbin, Contracts, § 1220 at 461-465 (1964)). Here, plaintiff has essentially brought this suit seeking a remedy that was an alternative to that which she urged against her title insurer. She is not barred from doing so under the doctrine of election of remedies and it would be unreasonable and contrary to the spirit of that equitable doctrine to transfer ownership of plaintiff's property to defendant under the circumstances presented.

IV.

We also agree with Judge McDonnell's decision to dismiss defendant's adverse possession and prescriptive easement claims and disagree that the court's decision was against the weight of the evidence. Our Supreme Court has recognized that "adverse possession promotes certainty of title and protects the possessor's reasonable expectations. [Moreover,] allowing adverse possession promotes active and efficient use of land, and 'tends to serve the public interest by stimulating the expeditious assertion of . . . claims'" before they become stale. Devins v. Borough of Bogota, 124 N.J. 570, 577 (1991) (citations omitted). Adverse possession "rewards the person who has made productive use of the land, it fulfills expectations fostered by long use, and it conforms titles to actual

12

use of the property." Randolph Town Ctr., L.P. v. Cty. of Morris, 374 N.J. Super. 448, 458 (App. Div. 2005) (quoting Restatement (Third) of Property: Servitudes, § 2.17 cmt. c (2000)), aff'd in part, vacated in part on other grounds, 186 N.J. 78 (2006).

In order to obtain property by adverse possession or to create an easement by prescription, however, the use must be adverse or hostile, visible, open and notorious, and continuous. Yellen v. Kassin, 416 N.J. Super. 113, 119-20 (App. Div. 2010); see also Plaza v. Flak, 7 N.J. 215, 222-23 (1951). The requisite adverse time period in New Jersey is generally thirty years; however, the period is sixty years for woodlands or uncultivated tracts. N.J.S.A. 2A:14-30. The proponent of the easement has the burden of establishing the elements by a preponderance of the evidence. Yellen, 416 N.J. Super. at 120.

"Open" use, in the context of easement law, "generally means that the use is not secret." Id. at 119-120, 121 (citations omitted). The related term "notorious" generally means actual knowledge on the part of the property owner or that the use is widely known. Ibid. In addition,

> A use is adverse or hostile if a person uses the property of another under a claim of right, pursued with an intent to claim against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by

claimant before the period of adverse possession has elapsed.

[Id. at 120 (internal quotation marks omitted).]

Here, defendant failed to establish that any use of the disputed property was "adverse or hostile" and "under a claim of right," rather than "indulgent and permissive in character." Id. at 120-21. In this regard, plaintiff and her son mowed the lawn for a decade in the area which defendant claims he owns and he never asked either person to stop or to leave his property. Further, he said nothing when plaintiff removed the original hedges along the disputed area in 2008, nor did he pay for the removal. And, plaintiff noted that she planted the new hedges "about five feet away [from the Waddington pipe] knowing the trees were going to extend" to allow the trees to grow "so they wouldn't cause an encroachment." We also note that defendant purchased the property in 1981 and plaintiff informed him of the boundary in 2010 and had been maintaining the property in the disputed area since 2006.

We acknowledge defendant's contrary evidence regarding the elements of adverse possession and prescriptive easement, but are satisfied Judge McDonnell carefully considered the evidence and glean from her ruling that she credited the testimony of plaintiff and plaintiff's son and also concluded from the photographs that defendant's driveway was extended as part of the

14

replenishment. Accordingly, we concur with the trial judge's determination that no easement by prescription was created, and likewise that defendant did not satisfy the conditions for adverse possession.

V.

We also find no support for defendant's claim that Judge McDonnell misapplied the rule established by the Supreme Court in Mannillo against a presumption of knowledge for purposes of the open and notorious element of adverse possession. Mannillo provides that a landowner may not retain the right to use a small portion of an adjacent landowner's property where "the encroachment of an adjoining owner is of a small area and the fact of an intrusion is not clearly and self-evidently apparent to the naked eye but requires an on-site survey for certain disclosure." 54 N.J. at 388; see also Symczak v. Laferrara, 280 N.J. Super. 223, 229-30 (App. Div. 1995) (applying a "balancing of the equities" test to award the defendant, the owner of a vacant lot, monetary damages rather than requiring the plaintiffs to destroy their home, which they had mistakenly built on part of the defendant's lot).

In Mannillo, the defendant's steps and concrete walk encroached fifteen inches onto plaintiff's property. 54 N.J. at 382. Our Supreme Court remanded for the trial court to determine "whether the true owner had actual knowledge of

15

the encroachment," "whether plaintiffs should be obliged to convey the disputed tract to defendant," and if so, "what consideration should be paid for the conveyance." Id. at 389. In support of its decision, the Mannillo Court held that while a property owner "may be presumed to have knowledge" of adverse occupancy "where possession of the land is clear and unequivocal and to such an extent as to be immediately visible . . . no presumption of knowledge arises from a minor encroachment along a common boundary" and that "[i]n such a case, only where the true owner has actual knowledge thereof may it be said that the possession is open and notorious." Id. at 388, 89. In this regard, the Court noted that "to permit a presumption of notice to arise in the case of minor border encroachments not exceeding several feet would fly in the face of reality and require the true owner to be on constant alert for possible small encroachments" because "[t]he only method of certain determination would be by obtaining a survey each time the adjacent owner undertook any improvement at or near the boundary, and this would place an undue and inequitable burden upon the true owner." Id. at 388-89.

Applying Mannillo, Judge McDonnell balanced the equities between the parties and arrived at a fair and equitable solution. Here, plaintiff was the unequivocal owner of the disputed portion and her son maintained the area past

16

the white post for over a decade. Further, plaintiff removed and re-planted hedges understanding they would extend beyond the location of the plantings in order to comply with a property line defined in the Waddington survey, and which the Clancy survey confirmed. On the other hand, defendant merely acted based on a hearsay statement from his ex-wife's uncle that his property extended to the white post and elected not to get a survey on the property. Given that the six-inch encroachment by defendant's rear fence which was not "clear and unequivocal" or "immediately visible," Mannillo, 54 N.J. at 388, a presumption that plaintiff knew of the encroachment would have been improper, especially as defendant did not undertake "extensive improvements" on the property, id. at 389. Defendant did not establish the open and notorious elements until plaintiff had "actual knowledge thereof," ibid., which was at the time of the Waddington survey in 2006.

Despite defendant's contentions that awarding the disputed property to plaintiff would cause undue hardship because a well was in his driveway and it would be difficult to get an oil truck or an emergency vehicle onto his property, we are satisfied that the court considered defendant's claims and that he was still able to service the property and access the well. Further, there was insufficient evidence that an emergency vehicle would be unable to access the property

under the circumstances.  Indeed, defendant testified and introduced photos showing that he was able to park his tractor trailer and another vehicle in the driveway at the same time.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION