**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1730-20

JOSEPH HERBERT WEBB
and BETTY JO WEBB, h/w,

     Plaintiffs-Appellants,

v.

HUBWARD CO., a New Jersey
Partnership, MIDAS REALTY
CORPORATION, AUTO
EXPERTS USA, L.L.C., t/a
MIDAS AUTO SERVICES
EXPERTS,

     Defendants-Respondents.

_____

Argued August 16, 2022 – Decided September 13, 2022

Before Judges Messano and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Burlington County, Docket No. C-000111-18.

Joseph M. Pinto argued the cause for appellants (Polino and Pinto, PC, attorneys; Joseph M. Pinto, on the brief).

Stuart J. Polkowitz argued the cause for respondent Hubward Co. (Brach Eichler LLC, attorneys; Stuart J. Polkowitz, of counsel and on the brief; Mark E. Critchley, on the brief).

PER CURIAM

In this quiet title action involving a dispute between two adjoining property owners, plaintiffs Joseph Herbert Webb[1] and his wife, Betty Jo Webb, appeal from a January 27, 2021 Chancery Division order granting judgment after a non-jury trial to defendant Hubward Co. The court dismissed plaintiffs' claim sounding in adverse possession and declared defendant the exclusive and sole owner of the entire tract of land formally identified as 1627 Route 38, Block 18, Lot 4, in Lumberton Township (Hubward Property). The court denied plaintiffs' remaining requests for relief, including their claim for money damages and counsel fees, and dismissed defendant's counterclaims and requests for attorneys' fees and costs.

I.

Plaintiffs initiated this action by filing a verified complaint, which they twice amended, seeking to quiet title based on their alleged adverse possession of an approximate 10,000 square foot portion of defendant's property. To

---

[1] Where necessary, we refer to plaintiffs throughout our opinion by their first names to distinguish them, intending no disrespect.

establish that they satisfied all elements of N.J.S.A 2A:14-30, plaintiffs' proofs addressed their open encroachments on defendant's land, commencing with the planting of a line of trees in approximately 1978 or 1979, and continuing with the installation of permanent structures upon it between 2003 and 2004, and recreational use of that tract of land since. We briefly detail those proofs as found by the judge to provide context for her opinion and our decision.

When plaintiffs purchased their lot in 1975, it was undeveloped and surrounded by similar tracts of land, including an abandoned farmhouse and barn located on its western border. The property is roughly rectangular in shape, with its northern boundary line bordering County Route 683 in Mount Holly Township. Its southern boundary line, which abuts the Hubward Property, demarcates Mount Holly Township from Lumberton Township.

Shortly after purchasing the property in September 1975, plaintiffs completed construction of a single-family home, and later in 1977, installed an in-ground swimming pool and concrete deck in the rear of the property, which they enclosed with a metal fence. In 1978 or 1979, plaintiffs hired a landscaper who planted a staggered line of evergreen-type trees along the rear boundary line. These plantings, referred to in the record as the "Back Forty Trees,"

generally began at the southeast corner of the property, ending at the western boundary.

As detailed by defendant's surveyor and expert witness, Suzanne E. Warren, PLS, of MidAtlantic Engineering Partners, at the time the Back Forty Trees were planted, the property to the south was an undeveloped field, consisting primarily of scrub brush, bushes, and small, deciduous trees. Further, according to plaintiffs, this area included debris scattered across portions of the property. That tract of land to the immediate south of the Back Forty Trees, comprising approximately 10,000 square feet, is the subject of this appeal (Contested Property).

Defendant purchased its property, a commercial lot consisting of a single building, in 1984. From 1988 to April 2018, Midas Realty Corporation was defendant's tenant, and since that time, a Midas franchisee has occupied the property. Plaintiffs' and defendant's properties share a common rear lot line which, as noted, divides Mount Holly and Lumberton Townships.

Joseph testified that in 1978 or 1979, subsequent to the planting of the Back Forty Trees, he cut an approximate twenty- to thirty-foot-wide strip of the scrub grass immediately to the south of those trees. Plaintiffs referred to this

4

area as the "strip," and their landscaper maintained that area for a portion of the year.

Plaintiffs used this strip area for recreational purposes. Joseph explained that he hit golf balls from the strip into an open area to the east "mostly" on weekends. Betty Jo and her friends occasionally joined Joseph hitting golf balls and stated that in the warmer months they would also take their daughter to the strip for about an hour after work. Plaintiffs also stated they utilized the strip of grass area for picnics, badminton, volleyball, horseshoes, soccer, birthday events, and pool parties during holidays.

On cross-examination, plaintiffs acknowledged they removed the recreational equipment from the strip at the end of each day, and did not walk their dog in the area, or maintain it during the winter months. Plaintiffs further clarified that between the April and October period, they used the area no more than a couple hours a day, primarily on weekends and some evenings during the weekdays.

Joseph testified that in the late 1970s he noticed an area south of the strip had been excavated with concrete objects placed in the open area, which he believed to be part of a municipal drainage project related to the widening of Route 38. After contractors filled the trench and graded the area, vegetation

5

began to grow including poison ivy and sumac, which plaintiffs periodically sprayed in order to control and contain the plants' growth.

In 1983, Lumberton Township approved a site plan for the Hubward Property that included a paved parking area north of a building constructed on the property, bordered by a vegetation buffer on a raised embankment, which included white pine trees. These trees, referred to as the "Midas Trees," grew to the south of the Back Forty Trees. As noted, the area described as scrub by the parties separated the two tree lines.

In approximately 1986, Joseph testified that he began to see homeless persons "quite often" on the Hubward Property, specifically near the paved area behind the Midas building, in the area of the vegetation buffer, and in the scrub below the embankment. Plaintiffs contacted the police regarding the presence of the homeless persons, but never notified anyone associated with the Hubward Property. The homeless individuals remained present on the property until the Back Forty Trees were removed some time in 2003 or 2004.

Keith Eberly, the Webb's landscaper, testified that he removed the Back Forty Trees and leveled the area "around 2004." While it is unclear from the conflicting testimony who physically removed it, the scrub vegetation located on the strip to the south of the former Back Forty Trees was also excavated, and

6

the section of land from the former Back Forty Trees extending to or near the base of the embankment containing the Midas Trees was leveled. This resulted in a standing water condition at a low spot in the lawn, which Eberly later re-graded to mitigate. Both Joseph and Eberly testified that a "swamp maple" tree that existed in the scrub area was not removed during this clearing.

Eberly testified that after the scrub was cleared and leveled, he planted grass seed in the area and installed two "kidney" shaped planter beds, a twenty-foot by twenty-three-foot concrete slab, basketball hoop, and underground sprinklers. Eberly stated he also planted a row of thirty-five to forty evergreen-type trees approximately parallel to, but beyond, the eastern boundary of the plaintiffs' backyard. Betty Jo testified that some of those trees, however, belonged to plaintiffs' neighbor to the east, and Eberly only planted the evergreen-type trees to supplement the tree line after some trees had died.

David Lichterman, defendant's partner, testified he had no knowledge of Hubward, or any predecessors-in-interest, being contacted by the plaintiffs at any time regarding their use of portions of the property. For their part, plaintiffs acknowledged they never sought permission from Hubward or any prior owners to use the Contested Property nor did they display "no trespassing" or similar signs on the Contested Property.

7

In 2018, after a storm destroyed many of the evergreen trees planted by Eberly in 2004, plaintiffs installed a six-foot wood "stockade" fence on the inside of the remaining eastern tree line. Plaintiffs conceded that they failed to apply to Lumberton Township to install the 2018 fence. That fence continued onto the Hubward Property approximately sixteen feet north of the eastern boundary line. It then makes an approximately ninety-degree westward turn onto the Hubward Property and terminates at a split rail fence enclosing the yard of a western neighbor.

Tim J. Maser, PLS, of Maser Surveying LLC, testified for plaintiffs as an expert witness in the fields of surveying and interpretation of aerial photography. Maser prepared and identified the survey of the parties' respective properties, their common Mount Holly/Lumberton Township border line, and the Contested Property and prepared a survey of each area.

At trial, the principal surveys of Maser and Warren did not conflict in any material way and were consistent with the metes and bounds descriptions of the parties' respective deeds. Both surveys similarly identified the Contested Property as the four-sided area on the Hubward Property, which enclosed the kidney-shaped flower beds, the basketball court, and the thirty-foot swamp maple tree.

A-1730-20

Warren acknowledged that the precise location of where the east-west portion of the Back Forty Trees were planted was difficult to decipher because the growth of the trees obscured a more specific identification of where the trees were planted. Warren testified, however, that by examining the deeds, comparing the historic aerial photos, and utilizing standard survey measurements, she was able to determine that a section of the Back Forty Trees followed a seventy-five-degree angle relative to the north-south tree line running in the vicinity of the plaintiffs' eastern boundary.

Warren stated that based upon her interpretation, the east-west portion of the Back Forty Tree line proceeded parallel to plaintiffs' home. From there, the tree line continued and extended southward fourteen to sixteen feet along the western boundary at a perpendicular angle. Warren testified that based upon her calculations, the tree line intersected with the western boundary and created a triangular encroachment of 365.75 to 477.68 square feet on the Hubward Property.

On August 28, 2020, the Chancery judge issued a written opinion and corresponding written order denying plaintiffs' action to quiet title to the Contested Property. In support of her decision, the judge first concluded that the improvements to the Property made in 2003 and 2004 "fail[ed] to satisfy the

A-1730-20

essential requirement in N.J.S.A. 2A:14-30 of [thirty] years' actual possession of the real estate."

The judge also determined plaintiffs' use of the Contested Property "prior to 2003 also f[ell] short of satisfying the elements for adverse possession." She explained that plaintiffs' recreational use of the Contested Property was "periodic throughout the week and weekends, of limited duration, and non-existent in the late[-]fall and winter months," and therefore not continuous. The judge also determined plaintiffs' use of the Contested Property was neither open nor notorious, as prior to the 2003 and 2004 improvements, the Contested Property was "substantially different from [plaintiffs'] well-manicured lawns," "largely mirrored the surrounding undeveloped properties," and "was sheltered on three sides and cutoff by trees from the [plaintiffs'] property." The judge further concluded plaintiffs' use of the land was not exclusive "as homeless people also were seen in the area" prior to the 2003 and 2004 development.

Further, the judge found that "planting and cultivation of the Back Forty Trees [wa]s not sufficient evidence of their adverse possession." The judge explained that the trees were planted in 1978 or 1979 and were removed in 2003 or 2004, and as such, only existed on the property for twenty-five or twenty-six

years, which fell short of the "[thirty]-year prescription period of actual and notorious possession."

In addition, the judge stressed the "evidence was imprecise, at best, as to whether, and to what extent, the Back Forty Trees encroached onto the Contested Property." She accepted Warren's testimony that the Back Forty Trees may have slightly encroached across the boundary "in a triangular wedge," but concluded this intrusion was relatively minor, as it "did not extend the full border of the common boundary line and its area of likely encroachment diminished as it proceeded." The judge cited Mannillo v. Gorski, 54 N.J. 378, 388-89 (1969), and stated that in cases of "minor border encroachments," actual knowledge of the intrusion is necessary, and plaintiffs' arguments to the contrary were "unpersuasive." She also relied upon our decision in Stump v. Whibco, 314 N.J. Super. 560 (App. Div. 1998), for the proposition that under certain circumstances, even the placement of a fence on disputed property could be deemed a minor encroachment.[2] This appeal followed.

_____

[2] In Stump, we affirmed a trial court's ruling that the plaintiffs failed to establish the elements of adverse possession, albeit on different grounds than relied upon by the trial court. Stump, 314 N.J. Super. at 575. In that case, the plaintiffs claimed ownership of a significant portion of their neighbor's property by adverse possession based, in part, on the presence of a temporary wire mesh fence. Id. at 580-81. The trial testimony established that the wire mesh fence

Plaintiffs raise several points on appeal. They argue the judge erred when she concluded plaintiffs' use of the Contested Property did not satisfy the elements of adverse possession. Plaintiffs also assert the judge improperly credited the testimony of defendant's surveyor, particularly because the surveyor did not rely upon historical aerial photographs and "strictly gave a visual opinion rather than one based on calculations."

Finally, plaintiffs argue the judge misapplied our holding in Stump, resulting in an "erroneous conclusion concerning the [plaintiffs'] planting and activity concerning the Back Forty Trees." Specifically, plaintiffs contend the judge incorrectly relied upon the trial court's reasoning in Stump, which we rejected, rather than our holding. Plaintiffs maintain Stump stands for the proposition that a "fence or a hedgerow" can "delineate the boundaries" for

---

was "covered with bushes," and the previous owners could not recall where it "originated and where it terminated." Id. at 581. The wire mesh fence was eventually replaced by a more permanent and conspicuous railroad tie and cable fence. Ibid. Following its installation, the new fence was maintained and kept clear of brush. Ibid. We determined "that [the railroad tie and cable] fence in the condition described met the requirements for boundary definition that a claim for adverse possession must of necessity entail." Ibid. We concluded, however, that the poorly maintained wire mesh fence was an encroachment, but did not begin the period of "open and notorious" possession, id. at 581-82, and the railroad tie and cable fence was not present for the appropriate amount of time needed to satisfy the statutory requirement of thirty years. Ibid.

purposes of an adverse possession claim. They further assert the placement of the Back Forty Trees "represent[ed] an enclosure of the type discussed in Stump" as it intruded on defendant's boundary line in a triangular wedge, as conceded by Warren, which "remained there from 1977 to 2004."

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We owe no deference, however, to a trial court's interpretation of the law, and review issues of law de novo. State v. Parker, 212 N.J. 269, 278 (2012); Mountain Hill, LLC v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

We have considered plaintiffs' contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Here, we are satisfied that the judge correctly granted judgment to defendant and dismissed plaintiffs' second amended complaint. We affirm substantially for the reasons expressed in the judge's comprehensive August 28, 2020 written opinion and add the following to amplify the reasons for our decision.

Turning first to plaintiffs' argument that the judge erred in dismissing their adverse possession claim, we disagree that her conclusion was a mistake of law, and not supported by substantial and credible evidence in the record. Our Supreme Court has recognized that "adverse possession promotes certainty of title . . . promotes active and efficient use of land, and 'tends to serve the public interest by stimulating the expeditious assertion of . . . claims'" before they become stale. Devins v. Borough of Bogota, 124 N.J. 570, 577 (1991) (citations omitted). Adverse possession "rewards the person who has made productive use of the land, it fulfills expectations fostered by long use, and it conforms titles to actual use of the property." Randolph Town Ctr., L.P. v. Cty. of Morris, 374 N.J. Super. 448, 458 (App. Div. 2005) (quoting Restatement (Third) of Prop.: Servitudes § 2.17 cmt. c (2000)), aff'd in part, vacated in part on other grounds, 186 N.J. 78 (2006).

In order to obtain property by adverse possession or to create an easement by prescription, however, the use must be adverse or hostile, visible, open and notorious, and continuous. Yellen v. Kassin, 416 N.J. Super. 113, 119-20 (App. Div. 2010); see also Plaza v. Flak, 7 N.J. 215, 222-23 (1941). The requisite adverse time period in New Jersey is generally thirty years, however, the period is sixty years for woodlands or uncultivated tracts. N.J.S.A. 2A:14-30. The

proponent of the easement has the burden of establishing the elements by a preponderance of the evidence.  Yellen, 416 N.J. Super. at 120.

"Open" use, in the context of easement law, "generally means that the use is not secret."  Id. at 119-21.  The related term "notorious" generally means actual knowledge on the part of the property owner or that the use is widely known.  Id. at 121.  In addition,

> A use is adverse or hostile if a person uses the property of another under a claim of right, "'pursued with an intent to claim against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by claimant before the period of adverse possession has elapsed.'"
>
> [Id. at 120 (quoting A. J. & J. O. Pilar, Inc. v. Lister Corp., 22 N.J. 75, 81 (1956)).]

Viewing the record through this analytical framework, we find adequate, substantial and credible evidence in the record to support the judge's decision. In addition to the testimony of the parties, the judge had a thorough visual record in evidence, including accurate surveys as well as multiple photos of the parties' property, including the contested tract of land and the surrounding environs.

Simply put, plaintiffs failed to establish that they utilized any portion of the Contested Property in an open and notorious fashion for the requisite statutory period.  The Back Forty Trees, planted in 1978 or 1979, were, as the

judge found, essentially placed on the rear boundary line of plaintiffs' property and removed in 2003 or 2004. We agree with the judge that placing a group of trees creating a natural border on a boundary line was neither open nor notorious under our case law such that defendant should have been on notice that plaintiffs claimed an ownership interest in any section of the Contested Property, let alone an area encompassing approximately 10,000 square feet straddling two municipalities.

As noted, the Back Forty Trees were removed in 2003 or 2004. While we agree that plaintiffs' placement of the basketball court and flower beds on the Contested Property clearly qualifies as open and notorious use, those acts did not commence until 2004, a mere fifteen years before plaintiffs filed the verified complaint. We also agree with the judge that the intermittent and seasonal recreational activities simply are not of the sort that would support a finding that plaintiffs utilized the property openly and notoriously for thirty years. This is particularly so in light of the judge's specific and credibility-based findings as to the location of the Back Forty Trees. That finding essentially started the thirty-year clock in 2003 or 2004, as opposed to 1978 or 1979.

Finally, plaintiffs' criticism of the judge's reliance on Stump is unavailing for two reasons. First, "appeals are taken from judgments and not from

opinions," <u>Bandler v. Melillo</u>, 443 N.J. Super. 203, 210 (App. Div. 2015) (quoting <u>Glaser v. Downes</u>, 126 N.J. Super. 10, 16 (App. Div. 1973)), and thus even if we accept plaintiffs' claim that the judge minimized the significance of a fence in the context of an adverse possession claim, any error in that regard would have no effect on our determination that the court's conclusion plaintiffs failed to establish all elements of N.J.S.A. 2A:14-30 was supported by substantial credible evidence in the record.

Second, we disagree with plaintiffs' suggestion that the holding in <u>Stump</u> provides them with relief in any event. As discussed, <u>supra</u>, we concluded in that case that plaintiffs failed to establish they encroached upon the disputed portion of their neighbor's property openly and notoriously for the required statutory period. We acknowledge plaintiffs' contrary evidence but are satisfied the judge carefully considered the trial proofs, credited the testimony of Warren, and determined that evidence did not establish their right to the Contested Property by adverse possession.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1730-20